Rockingham, }
June 1, 1937. }

THE YOUNG WOMEN'S CHRISTIAN ASSOCIATION *v.* PORTSMOUTH.

*Jeremy R. Waldron* and *Wyman P. Boynton* (*Mr. Waldron* orally), for the plaintiff.

*Leo Liberson,* City Solicitor (by brief and orally), for the defendant.

ALLEN, C. J.   By statute (Laws 1930, *c.* 4) the personal property of religious, educational and charitable societies locally incorporated or organized and their real estate owned and occupied by them for their charitable purposes are tax exempt, provided none of the income or profits of their business is used or appropriated for other than the charities they administer.

The act requires compliance with certain defined tests to constitute a religious or educational institution within its application.   It may be assumed that the plaintiff is not such a body under the act and may be exempted from taxation only as it is shown to be a public charity of another character.   But its services in the fields of religion and education have evidentiary value to show its proper classification as a charitable organization within the act.   They are indications of an enterprise not undertaken as a commercial venture, with a money-profit motive, or as a group devoted to its own social enjoyment.

The defendant, asserting that tax exemption laws are to be con-

strued with rigorous strictness and a technique of narrowing application, takes the position that the plaintiff is not a charitable institution within the tenor of the exemption statute, for reasons to be later stated and considered.

Whatever may be the present standing of rules of strict construction for certain classes of legislation, in any event they are controlled by and subordinate to the principle that the ascertainment of the actual legislative intent is the only purpose and objective of proper construction. "The question is what the words used meant to those using them." *Clough* v. *Railroad*, 77 N. H. 222, 230. Legislation is not to be restricted, thwarted or defeated contrary to its intended scope of application fairly stated and shown. Conceding that exceptional situations established by legislation are not to be expanded beyond the limits intended for them, they are not to be curtailed by lessening the area of the intended scope. A policy for exceptions is not to be belittled in favor of the policy not embracing the exceptions. Each policy is to receive its due recognition.

An exemption of property from taxation is a classification placing the property in the non-taxable list. Whether the classification be expressed through unstated omissions of the property from taxation or by stated exceptions, is immaterial. The broad principle of equal and proportionate taxation does not require that valid classifications resulting in tax exemptions are to be treated with judicial disfavor; and the constitutional mandate that no tax shall be laid to impose upon a taxpayer more than his share of the burden of taxation is not disregarded by an exemption which classification produces provided the exemption serves the general welfare. The policy of equality of taxation and that of serving the general welfare are each to be respected, in the light of each other. The legislation being valid, an attitude of hostility towards either policy is not to be taken.

How the legislature has stated its will in acting upon both policies, is not to be ascertained by sacrificing purpose to form of statement. If it is clear that an authorized exemption was intended, it is to be given full, and not partial, effect. An exemption of charitable institutions from taxation being granted, a prescribed condition that only such as meet a hard and fast definition does not accompany it. "The legislative purpose to encourage charitable institutions is not to be thwarted by a strained, over-technical, and unnecessary construction, . . ." *Carter* v. *Whitcomb*, 74 N. H. 482, 487. Whether or not an institution is charitable in character, does not depend upon its exemption from taxation. Whatever the requirements to constitute

a public charity, they are not greater or more insistent if it becomes tax exempt. Whatever in the law is regarded as a charity public in nature is relieved from taxation if it takes institutional form. The exemption does not aid in showing what a charity is. No evidence of a special or restricted meaning appearing, the usual meaning in the legal sense is intended.

The defendant confuses the rule that a doubtful application of an exemption is to be resolved against the party claiming it with the notion that the policy to tax casts a shadow on the policy to exempt. The policy to tax may account for the rule that it will prevail if the policy to exempt has not been clearly exercised, but there is no rule that any such exercise is to be regarded as doubtful. In *Williams* v. *Park*, 72 N. H. 305, 311, 312, and cases cited, statutes whose language was thought to be doubtful in certain applications were construed to deny the exemptions claimed. No theory was invoked that an exemption clearly granted was to be doubtfully regarded, or that an exemption of itself raised a doubt.

The point that there is a trend against exemptions to charitable institutions is met by the fact that no repeal of the legislation has been enacted. The most that can be said is that a limitation has been prescribed in respect to the exemption of subsequently acquired property. Laws 1931, *c.* 148. But this leaves in full force the exemptions granted by the legislation prior to 1931. No disturbance of existing exemptions was undertaken by the 1931 act.

A public charity has been defined in various terms. In brevity of statement, ". . . a gift for the benefit of the public generally is valid" (*Glover* v. *Baker*, 76 N. H. 393, 417), and "a trust for the benefit of a definite section of the public" is "a charitable or public trust" (*Roberts* v. *Corson*, 79 N. H. 215, 216). The exemption statute does not apply to all charities. They must be local and institutionally organized. Religious and educational institutions are separately categoried. Their real estate not occupied by them is not exempt. And their income and business profits must be used for charitable purposes. Summarized, if an institution is organized and conducted to perform some service of public good or welfare, with no pecuniary profit to its officers or members, and with no restrictions which confine benefits to them, its descriptive character as charitable under the statute follows.

The plaintiff clearly comes within the classification. Its activities are of social or welfare service in various forms. It gives aid to an indefinite number of the public in material, moral, recreational, social,

and cultural ways. Its benefits are not restricted to its members. Its income and business profits are all available and used for its benevolent purposes. It is not otherwise conducted in any respect.

The facts do not support the claim of self-interest. The benefits extended by the plaintiff are not limited to its members. If they enjoy them or some of them, it is because they are members of the public entitled to share in them and not because of their membership in the institution. The designation of the institution as a body formed and conducted for the good of its members only, is in direct contradiction of purpose and performance. Its doors are not closed to outsiders, and its undertakings are essentially of a public, as contrasted with a private, nature. It is a public organization in the sense that the public, or some indefinite part of the public, are its beneficiaries. No facts presented indicate that it is not in full observance of its fiduciary obligations to the beneficiaries. Self-interest is not evidenced merely by the payment of reasonable compensation to members for their service in the maintenance and conduct of its affairs, at least when their membership is not a requirement of their right to render the service.

The position that a charitable institution must be engaged in some governmental function to be exempted is not well taken and calls for no extensive discussion. In its conception a public charity may have a wide enough scope of purpose to extend to cases of direct relief of the public burden of maintaining governmental undertakings; but its underlying motive is of generosity and benevolence creating a purpose to bestow in direct form some benefit for the public. The expense of government may thereby be incidentally lessened but that it must be is not a requisite condition. Many charities are established because the government has not seen fit to take upon itself the charge and administration of their objectives. Whether an institution to be charitable in character may do only what the government may do, is an inquiry not here presented. It may be suggested, however, that there are constitutional restraints on governmental action and engagements not imposed upon a public charity.

The contention that the plaintiff's property is not exempt because the plaintiff uses it for business purposes in renting rooms and serving meals for which a charge is paid, is equally void of merit. The plaintiff must be in occupancy and use of its property, but "It is use in aid of the final purpose rather than immediacy of use in such purpose that is determinative" (*Hedding &c. Ass'n.* v. *Epping,* 88 N. H. 321). The reference in the exemption statute to a charitable institution's

business profits is conclusive to show that under the test of the statute it may engage in business without loss of its charitable character. The test comes in the use made of the profits. If some forms and kinds of business may be so separate from and unallied with the charitable engagements of the institution as to make the property devoted to the business taxable under a proper construction of the statute, that is not the situation here. The plaintiff's property is used and occupied by it for its charitable purposes, if also incidentally there is some limited business use of it made by the plaintiff.

*Abatement ordered.*

All concurred.