Cheshire,
No. 5477.

NATURE CONSERVANCY OF NEW HAMPSHIRE

*v.*

NELSON *& a.*

Argued May 3, 1966.
Decided July 15, 1966.

*Orr & Reno* and *Malcolm McLane* ( *Mr. McLane* orally ), for the plaintiff.

*James S. Davis* ( by brief and orally ), for the town of Nelson.

*Brighton, Fernald & Taft* ( *Mr. Richard R. Fernald* orally ), for the town of Hancock.

LAMPRON, J. Plaintiff was incorporated in 1960 as a voluntary corporation under RSA ch. 292. Its objects and general purpose " are and shall be ( a ) to preserve or aid in the preservation of all types of wild nature . . . ( b ) to establish nature reserves or other protected areas to be used for scientific, educational, and esthetic purposes; ( c ) to promote the conservation and proper use of our natural resources; ( d ) to engage in or promote the study of plant and animal communities and of other phases of ecology, natural history, and conservation; and ( e ) to promote education in the fields of nature preservation and conservation. " Its " property, assets, and income . . . are irrevocably dedicated to charitable purposes. "

RSA 72:23 ( supp ) provides a tax exemption of " V. The real estate . . . owned by charitable organizations and societies organized or incorporated in this state . . . and occupied and used by them for the purposes for which they are established, provided that none of the net income or profits thereof is used for any other purpose than the purpose for which they are established. " In other words to qualify for this exemption the plaintiff must be under obligation to provide to the general public, or some indefinite segment of it, certain benefits of the kind usually provided by charitable organizations and must occupy and use its land for that purpose. *Society of Cincinnati* v. *Exeter*, 92 N. H. 348, 352; *Young Women's Christian Ass'n* v. *Portsmouth,*

89 N. H. 40; *Holbrook Island Sanctuary* v. *Inhabitants of Town*, 214 A. 2d 660 ( Me. 1965 ); Restatement ( Second ), Trusts, *s.* 348.

The property involved is a 400-acre tract of land without buildings known as " The Island " in Lake Nubanusit, although it is actually a peninsula approximately two miles long and one half mile wide about one-quarter of which is in Hancock and the remainder in Nelson. It is bounded on the north and east by Lake Nubanusit and on the west by Spoonwood Lake. Access to it is almost entirely by boat.

The Trial Court made the following findings of fact which are supported by the evidence:

" 6. Prior to the purchase by the petitioner [ northerly half in March 1961, balance in March 1964 ], residents around the lake, and others, used the land for hunting, fishing, picnicking, hiking and the ' portage ' so-called, in crossing from Lake Nubanusit to Spoonwood Lake.

" 7. At the northern end of the island, at the time of the purchase by the petitioner, there had been at least two faded ' No Trespassing ' signs.

" 8. Since the purchase . . . the above such uses have increased, according to one witness, by as much as fifteen percent.

" 9. The petitioner has also created two trails to the pinnacle of the island and re-routed the canoe portage . . . so that it is now all on land of the petitioner.

" 10. The petitioner also had signs made as follows: ' Louis Cabot Preserve. This is a natural wildlife area maintained by Nature Conservancy for the enjoyment of all. You are welcome — But please observe these rules: No fires of any kind. No trash. No overnight camping. Do not disturb trees, flowers, or wildlife. Help keep this land unspoiled ' . . . with one sign being erected at the public landing in Hancock, one at the gate house in Nelson, one at the ' portage ', so-called, through to Spoonwood Lake and at various spots around the island.

" 11. The petitioner prepared one thousand cards . . . and the evidence was that five hundred of these have been given to members of the Preserve Committee and Public Safety officers. There was no evidence as to what, if any, distribution of these cards had been made to the public. . . .

" 12. Prior to the acquisition of the island by the petitioner, there had been one or two movements toward acquisition of the

area by the State of New Hampshire as a State Park. This State Park activity was opposed by the Nubanusit Lake Associates, Inc. . . . .

" 13. There are approximately sixty land owners around the lake and about forty of these are contributors to The Nature Conservancy of New Hampshire.

" 14. . . . One witness estimated that members of the Nubanusit Lake Associates, Inc. contributed twenty-five percent of the first fifty thousand dollars required to purchase the first half of the island and two to five percent of the fifty thousand dollars required to purchase the second half. . . .

" 15. The only way for the public to reach the island is by boat from the public beach and landing area located on the northeasterly shores of Lake Nubanusit . . . It is probable that the use of the area around the public landing has increased since 1961 and one witness estimated that as many as thirty to fifty cars, with boat trailers attached, would be parked at the public landing on a Sunday during the summer months. The fishermen came early and the bathers came later. Most of the bathers are local residents of the Town of Hancock. The cars with trailers attached are from various states. "

The fact that plaintiff's activities are not conducted for profit is not sufficient to qualify it for exemption under RSA 72:23 V ( supp ). *Appalachian Mountain Club* v. *Meredith*, 103 N. H. 5, 9. See *International College of Surgeons* v. *Brenza*, 8 Ill. 2d 141. Plaintiff had the burden of proving that it was a public charity, that is, that the general public, or a substantial portion of it, were the beneficiaries of the uses made of this " Island. " *Young Women's Christian Ass'n* v. *Portsmouth*, 89 N. H. 40, 43, 44; *Boston Chamber of Commerce* v. *Assessors of Boston*, 315 Mass. 712. It cannot be considered a charitable organization if its purposes are confined mostly to benefiting its own members. *Society of Cincinnati* v. *Exeter*, 92 N. H. 348, 356. Furthermore the public service which plaintiff is to render must be obligatory so as to enable the Attorney General or other public officer to enforce this right against it if the service is not performed. *Id.*, 352; RSA 7:19, 20. It follows that if the public benefit is limited to that which the plaintiff sees fit to provide at its option or in its uncontrolled discretion the requirements of RSA 72:23 V are not satisfied.

By its charter, the plaintiff, whose property is " irrevocably

dedicated to charitable purposes," is under obligation to conserve natural resources and "to promote education" in this field, to establish areas to be used for scientific, educational and esthetic purposes, to engage in and promote the study of plant and animal communities and other phases of ecology, natural history and nature conservation. These objects by their nature tend to promote the general welfare with no pecuniary profit to plaintiff's members and with no restrictions which confine benefits to them. This establishes plaintiff's status as a charity under RSA 72:23 V ( supp ). *Portsmouth Historical Society* v. *Portsmouth*, 89 N. H. 283; *Appalachian Mountain Club* v. *Meredith*, 103 N. H. 5, 9. The answer to transferred question No. 1 is "yes."

However in order to qualify for a tax exemption under the above statute, plaintiff's property must be occupied and used by it for its public charitable purposes. *Appalachian Mountain Club* v. *Meredith, supra,* 13; *Society of Cincinnati* v. *Exeter,* 92 N. H. 348, 352. This occupation and use cannot be slight, negligible or insignificant ( *Franciscan Fathers* v. *Pittsfield,* 97 N. H. 396, 401 ) but must, on the contrary, be in performance of these public purposes. *Appalachian Mountain Club* v. *Meredith, supra,* 14.

The Trial Court has found that the use of this property for recreational purposes by the residents around the lake may have increased 15%. since plaintiff's ownership. Besides the expenses of purchase, the plaintiff has spent about $160 for signs and incidental expenses during the five-year period for which exemption is sought. Its use of the property for educational purposes has consisted of a survey made by a student who was paid about $200 by an organization other than plaintiff. About forty-five students of Keene State College visited the "Island" on three to five field trips. Four quadrates were marked out in which the plants were inventoried for ecological purposes. Members of the Appalachian Mountain Club climbed to the pinnacle of the "Island" on one occasion and were given a lecture on plaintiff's purposes for use of this tract of land.

In addition thereto plaintiff created two trails thereon and re-routed a portage. There may have been other incidental activities which it would serve no useful purpose to enumerate.

Taking into consideration all the elements of occupation and use disclosed by the record for the period in question, we hold that they do not constitute such a use and occupation for public charitable purposes as to entitle the plaintiff to tax exemption

for the years 1961-1965. *Franciscan Fathers* v. *Pittsfield*, 97 N. H. 396, 401. The answer to transferred question No. 2 is "no."

*Petitions dismissed.*

All concurred.