Belknap,
No. 5658.

### ALTON BAY CAMP MEETING ASSOCIATION

*v.*

### ALTON.

Argued October 3, 1967.
Decided May 29, 1968.

*Nighswander, Lord & Martin* and *Conrad E. Snow* ( *Mr. Snow* orally ), for the plaintiff.

*Snierson, Chandler & Copithorne* ( *Mr. John P. Chandler* orally ), for the defendant.

LAMPRON, J. This is a petition for abatement of taxes for the year 1961 assessed by the town of Alton on certain properties owned by the plaintiff. The matter was heard originally by *Sullivan,* J. who died before rendering a decision. It was heard again by *Griffith,* J. who made findings of fact and transferred without ruling the issue whether all of plaintiff's property is exempt from taxation. Defendant's exceptions to certain of the Court's findings were neither briefed nor argued and are deemed waived. *Bartis* v. *Bartis,* 107 N. H. 34, 37.

The plaintiff association was incorporated under Laws 1874, ch. 173 for "such religious, moral, charitable and benevolent purposes as said corporation may from time to time designate." The Trial Court found that "Alton Bay Camp Meeting Association has as its principal purpose the fostering of religious

activities of the Advent Christian Church and . . . all uses of the property other than the primary religious use are subsidiary to that purpose . . . [T]he principal religious activity of the camp meeting ground is concentrated in some three weeks in August but . . . in addition . . . during the months of July and August . . . [plaintiff] conducts a day camp and also bible classes generally during the week, and Sunday meetings during both of these months."

"The Association is not operated for profit, although income from one source may be used to help support another activity. In the final analysis, the Association depends upon contributions for its continuance in operation as a camp meeting."

The parties have agreed that a tabernacle, chapel, religious bookstore and residence of the principal minister at camp meeting and the Barker Lot, so-called, which has been used exclusively for the association's youth camp, were properly exempted from taxation by the assessors of the town.

The items under dispute, assessed for $23,200., include 28 acres of land owned by the association and occupied by 183 cottages and 19 boat houses owned by association members and others, a dwelling, garages, office property, store building, a vacant bakery which has collapsed, a cafeteria and snack bar with rooms for personnel, and a rooming house.

The Trial Court found "that cottages may not be transferred or sold without the approval of the Association as far as maintaining their lease is concerned and that in case of inheritance of a cottage . . . the same requirement is made. It does appear, however, that enforcement of these regulations is not always strict and that from time to time some persons occupy cottages for a substantial length of time who do not participate in the religious activities. The Court, however, finds that this does not mean that the Association acquiesces specifically in such breach of their requirements. . . .

"The Court finds that the cottages and the rooms are generally occupied by members of the Advent Church, and their families, whose primary interest is the gathering with people of the same faith for the purposes of social and recreational activities and for the purposes of religious meetings.

"It would appear that insofar as there has been any change in the character of the operation of the camp from its earliest

inception it would consist largely in the increase of the permanency of the buildings and the length of their occupation as far as the season is concerned and the increase in the type and quantity of physical activity by way of sports, boating and bathing. . . .

"The Court finds that there is no evidence that the religious activity has been in any way downgraded in the years since the inception of the camp meeting . . . [or] any deterioration of religious faith."

The association's charter provided that its real and personal estate, limited to $10,000 but later increased to $100,000., "shall be exempt from taxation" but provided that the "legislature may alter, amend or repeal this act, or any of its provisions." Laws 1874, 173:1, 3, 4; Laws 1919, 244:1. However the above exemption was repealed by Laws 1913, ch. 115, the predecessor to RSA 72:23 ( supp ) which now governs such exemptions. *Hedding &c. Association* v. *Epping,* 88 N. H. 321, 322; *Trustees &c. Academy* v. *Exeter,* 90 N. H. 472, 479; *Appalachian Mountain Club* v. *Meredith,* 103 N. H. 5, 11.

Prior to the enactment of the latter law in 1957, a "Commission to Recommend Reorganization of the Tax Structure," created by Laws 1953, 360:5, 6, had reported to the Governor that the growing amount of institutional property exempted from taxation is not known so its effect upon the tax base cannot be appraised." Tax Policies in New Hampshire ( 1954 ) *p.* 38. Laws 1955, ch. 381, which stated in its preamble "it appears that the total value of ordinarily taxable property now exempt from taxation by virtue of tax exemption laws is in excess of one hundred million dollars," created a joint committee of the House and Senate "to study, investigate and examine into the matter of tax exempt property of every kind in the state, with particular reference to existing laws governing and granting such exemptions."

In its report ( Journal of the House ( 1957 ), *pp.* 147, 148 ), this committee recommended the enactment of a bill making changes in the tax laws relating to institutional exemptions which was enacted as Laws 1957, ch. 202, part of which is now RSA 72:23 ( supp ). In the debate preceding its passage, Senator Adams, who served on the joint study committee whose report resulted in H.B. 142 being drafted, stated that this bill "if it does anything, it tightens the tax exemption law in the State of New

Hampshire." Journal of the Senate ( 1957 ) *pp.* 761, 762. This court, in *Appalachian Mountain Club* v. *Meredith, supra,* 15, rejected a suggestion that this 1957 amendment to the exemption laws "was intended to be little more than a reorganization of existing provisions and a codification of judicial decisions interpreting them" and stated that the amendment had "no over-all purpose to widen the sweep of the exemption laws." In that opinion this court held that RSA 72:23 V ( supp ) imposed more rigid requirements for an exemption than those of the prior statute.

RSA 72:23 III ( supp ), under which plaintiff must sustain the exemptions it claims as a religious organization provides that the following real estate and personal estate shall be exempt from taxation: "houses of public worship, parish houses, church parsonages occupied by their pastors, convents, monasteries, buildings used principally for religious training or for other religious purposes, and the lands thereto appertaining owned and occupied by any regularly recognized and constituted denomination, creed or sect, organized or incorporated in this state, and the personal property used by them for the purposes for which they are established."

It is not contended, and cannot be on the facts of this case, that the buildings in controversy owned by the association meet any of the characteristics of buildings specifically exempted by the above section unless they are "buildings used principally for . . . religious purposes." Furthermore, interpreting this paragraph in the light of its legislative history and of our prior interpretation of other parts of this same section ( *Appalachian Mountain Club* v. *Meredith,* 103 N. H. 5 ); we hold that any of plaintiff's land which is to be exempted must be "owned and occupied" by the association and be "appertaining", that is, a part of, or used directly in conjunction with, "buildings used principally for . . . religious purposes."

We consider first the land owned by the association on which there are 183 cottages and 19 boat houses owned by and assessed to private individuals. The defendant concedes in its brief "that most of the cottages are occupied throughout the summer by families of whom the adult members, at least, are either members of or closely sympathetic to the Advent Christian Church. The defendant also admits that the availability of tax free lands for

summer cottages can be a great help to a church organization seeking strong attendance for an important program of concentrated summer religious activity." However defendant maintains that the above factors cannot supply the strict requirement that such land to be exempt must be owned and occupied by the association and be "appertaining" to one or more of the types of buildings specified as exempt in RSA 72:23 III ( supp ). We agree with this contention.

The above land is leased by the association to the owners of 183 cottages and 19 boathouses located on it. These owners also pay taxes on these buildings. To qualify as a lessee, an owner must agree to obey the rules of the association, indicate that he is a member of a Protestant church, and that he intends to participate in the religious activities, and that he is in sympathy with the purposes of the association. There is nothing in the record which indicates that the cottage owners cannot and do not use their cottages, boathouses, and the land appertaining thereto, in essentially the same manner and for the same purposes as any other cottage owner at Lake Winnipesaukee.

Although owned by the association, this land is occupied and used principally by the cottage owners for their own private and secular purposes and not for the statutory exempted religious purposes of the association. RSA 72:23 III; *St. Paul's Church* v. *Concord,* 75 N. H. 420, 426; *Appalachian Mountain Club* v. *Meredith,* 103 N. H. 5, 12. "The use of land for hunting, hiking and fishing is not the type of activity related to religious activities which the Legislature sought to exempt from taxation." *Franciscan Fathers* v. *Pittsfield,* 97 N. H. 396, 401.

We hold that this land is not exempt from taxation under RSA 72:23 III ( supp ) because it does not meet the statutory requirements that exempted land must not only be owned by a religious organization but must also be occupied by it and also be appertaining to buildings used by the religious organization for religious purposes.

Nor would this land be exempt from taxation under RSA 72:23 V ( supp ). To qualify for an exemption, this land, in addition to being owned by the association, would have to be occupied by the association and used directly by the association for its charitable purposes. *Appalachian Mountain Club* v. *Meredith,* 103 N. H. 5, 13-15. In this case, the cottage owners, by virtue

of their lease, are entitled as of right to use and occupy this land directly for their own purposes. *Cf. Hedding &c. Association* v. *Epping,* 88 N. H. 321, 323. This negatives a use and occupancy directly for charitable purposes by the association, which are essential requisites for an exemption.

As to the "Rooming Building" owned by the association, the Trial Court found that the "rooming house rented rooms to some 50 to 75 persons attending the religious services held in August, although rooms would be rented and were rented to persons at other times than at the time of the religious services in August." There is no indication that this property is specially adapted to religious uses or purposes nor is it so used. *Alton Bay Association* v. *Alton,* 69 N. H. 311. On the contrary, its principal use is for housing, a purely secular purpose. The fact that many of those using its facilities are there also to attend the association's religious activities does not alter the predominant character of its use which is for the residential convenience of the occupants. See *Teaneck Tp.* v. *Lutheran Bible Institute,* 20 N.J. 86, 90. *MacMurray College* v. *Wright* 38 Ill. 2d 272. *Cf. St. Paul's Church* v. *Concord,* 75 N. H. 420. Consequently it cannot be exempted as property "used principally . . . for religious purposes" under RSA 72:23 III ( supp ). However this "Rooming Building" can be considered essential to the holding of the camp meetings and for the accomplishment of the association's charitable purposes. As it is owned by the association and can be found to be occupied and used directly by the association "for the purposes for which they are established," it is exempt under RSA 72:23 V ( supp ). *Appalachian Mountain Club* v. *Meredith,* 103 N. H. 5, 14. It is not clear from the record how much use is made of this building for purposes not connected with the association's statutorily exempt activities, which use would be taxable. A division of value between the two uses should be made if such exist. *Trustees &c. Academy* v. *Exeter,* 92 N. H. 473, 483.

Plaintiff's Beacon Street building, the Trial Court found, "is maintained as a cafeteria and a snack shop, although there were a few rooms upstairs for personnel only. The cafeteria provided meals for camp meeting services during the period . . . when the services were actually held; and it should be noted that nearly two-thirds of all the meals served in the cafeteria were without

charge, since they were served to leaders or ministers participating in the services, personnel of the camp and their families.

"The snack shop was open for the purpose of serving sandwiches and snacks to persons on the grounds at hours when the cafeteria would not normally be open in addition to the regular eating hours, and in addition was open during July and the period in August when the camp meeting services were not being held. The snack bar actually occupies only a very small portion of the Beacon Street building . . . .

"In addition to the buildings which by stipulation and agreement are exempt from taxation by the town as closely connected with the actual religious activities of the association, the Court would find that the cafeteria building falls in this class and should be exempt under that interpretation." We hold that for reasons hereinbefore stated the Beacon Street building would not qualify for an exemption as a building "used principally for . . . religious purposes" under RSA 72:23 III (supp). However, the Trial Court has found that the "association is not operated for profit, although income from one source may be used to help support another activity. In the final analysis, the association depends upon contributions for its continuance in operation as a camp meeting." The integrated activities of the association as a whole determine if the cafeteria and snack bar are exempt under RSA 72:23 V (supp). *Serra Retreat* v. *County of L.A.,* 35 Cal. 2d 755, 758. The association conducts religious or other charitable activities on the camp grounds during the months of July and August when the cafeteria and snack bar are being operated. We are of the opinion that these eating facilities, which are patronized principally by participants in the association's activities, are reasonably necessary for the accomplishment of its charitable purposes. The rooms provided in that building for the personnel can also be considered necessary for the operation of these eating facilities. We hold that the Beacon Street property is owned, occupied and used directly by the association for the accomplishment of its charitable purposes and is exempt under RSA 72:23 V (supp). *Wentworth Home* v. *Portsmouth,* 108 N. H. 514. See *Serra Retreat* v. *County of L.A., supra; Saint Germain Foundation* v. *County of Siskiyou,* 212 Cal. App. 2d 911, 917, 918; *San Francisco Boys' Club, Inc.* v. *County of Mendocino,* 62 Cal. Rptr. 294, 297, 298.

It is impossible, on the facts presented to us, to determine the tax status for the year 1961 of the "so-called bakery [which] was vacant in 1961 and has since collapsed." This is also true of the "store building, so-called [which] was probably vacant in 1961" and "had previously been used as a grocery store for the convenience of the cottage owners, although any person who desired to purchase goods there could have done so." In the latter use it was not exempt from taxation. *Alton Bay Association* v. *Alton,* 69 N. H. 311. However "it subsequently has been developed as a teen-age center with ping pong tables and recreational facilities for teen-agers during the summer religious activities." As such it is owned, occupied and used directly by the association in carrying on its charitable purposes and is tax exempt under RSA 72:23 V (supp). See *Sisters of Mercy* v. *Hooksett,* 93 N. H. 301, 312, 313; *Cedars of Lebanon Hospital* v. *County of L.A.,* 35 Cal. 2d 729, 736. Its tax status when vacant land, as well as that of the bakery, must be determined by the tests previously set out herein for exemption under RSA 72:23 III (supp) and V (supp). See *Trustees &c. Academy* v. *Exeter,* 90 N. H. 472, 506. If these requirements are not met the property is taxable. *Franciscan Fathers* v. *Pittsfield,* 97 N. H. 396, 401; *Nature Conservancy* v. *Nelson,* 107 N. H. 316, 320.

"The so-called Hurd place in 1961 was the dwelling place of the manager of the Camp Meeting Association and also was utilized as rooms for visiting ministers and personnel employed by the association." On the record before us we hold that the uses made of this dwelling were an integral and essential part of the activities conducted by the plaintiff. The property was owned, occupied and used directly by the association in carrying on its enterprise and was exempt under RSA 72:23 V (supp). *Appalachian Mountain Club* v. *Meredith,* 103 N. H. 5, 14. See *Hedding &c. Association* v. *Epping,* 88 N. H. 321; *Trustees &c. Academy* v. *Exeter,* 90 N. H. 472, 505.

Finally that part, or proportional use made, of the garage property, to house transportation of the association, and the part or proportional use made of the office property by the manager of the association for the general management of the affairs of the association are exempt under RSA 72:23 V (supp). *Trustees &c. Academy* v. *Exeter, supra.* The balance or remaining use of these properties is taxable.

The parties have asked the court to consider the effect, if any, of Laws 1967, ch. 544 on the exemption status of the association's property. This law deals principally with the limit on the amount of property the association is authorized to hold. As to that part of this chapter which purports to repeal the tax exemption granted to the association in its charter, it is of no effect as we have hereinbefore held that the exemption had been repealed by Laws 1913, ch. 115. In summary Laws 1967, ch. 544 has no effect on the status of the association's property as regards its exemption from tax.

*Remanded.*

GRIFFITH, J., did not sit; the others concurred.