Sullivan
No. 82-252

## SENIOR CITIZENS HOUSING DEVELOPMENT CORPORATION OF CLAREMONT

v.

## CITY OF CLAREMONT

December 28, 1982

*Leahy, Denault & Moody*, of Claremont (*Thomas P. Connair* on the brief and orally), for the plaintiff.

*Elliott, Jasper & Bennett*, of Newport (*Louie C. Elliott, Jr.*, on the brief and orally), for the defendant.

*Mozer & Swetnick*, of Washington, D.C. (*Robert J. Mozer* on the brief), by brief for the National Council of Senior Citizens, Inc., as intervenor.

KING, C.J. The issue presented by this interlocutory transfer without ruling is whether apartment units in a housing project for low-income elderly and handicapped individuals, operated by a charitable corporation, are exempt from taxation under the terms of RSA 72:23, V, if the apartments are not open to all senior citizens nor occupied by officers of the corporation. We hold that such apartments are exempt from taxation.

The plaintiff, Senior Citizens Housing Development Corporation of Claremont (Senior Citizens), is a non-profit corporation which owns and operates a housing project for low-income elderly and handicapped persons in the city of Claremont, called Senior Congress Park. The purpose of the corporation is to promote "the welfare of needy elderly and handicapped families through the provision of housing for low and moderate income individuals who do not possess the means to furnish themselves with decent, safe, and sanitary housing." The tenants living in the project generally are required to pay twenty-five percent of their income as rent. The project is subsidized by the United States Department of Housing and Urban Development (HUD).

Senior Citizens is a charitable organization within the meaning of section 501(c)(3) of the Internal Revenue Code. It is a wholly-owned subsidiary of the intervenor, the National Council of Senior Citizens, Inc. (National Council), a tax-exempt organization within the meaning of section 501(c)(4) of the Internal Revenue Code. National Council is the parent corporation of seventeen other non-profit corporations similar to the plaintiff.

At issue in this case is the extent to which the housing project is tax exempt under RSA 72:23, V. That statute provides that the following real estate and personal property is exempt from taxation:

> "The real estate and personal property owned by charitable organizations and societies organized or incorporated in this state or having a principal place of business in this state, and occupied and used by them for the purposes for which they are established, provided that none of the income or profits thereof is used for any other purpose than the purpose for which they are established."

The defendant City of Claremont contends that the apartment units in the project are not exempt from taxation by the city because they are not "occupied and used" by the corporation within the meaning of the statute. In a letter to the plaintiff granting only a partial exemption, the city stated that because the occupants of the apartments are not officers or members of the corporation, and

because the units are not open to all senior citizens, the apartment units do not qualify as exempt property. It granted Senior Citizens an exemption for only those areas which are "open to all Senior Citizens." Consequently, the city granted Senior Citizens only a nine-percent exemption and assessed Senior Citizens over $62,000 in real property taxes for 1981.

When Senior Citizens did not pay the tax, the city scheduled a tax collector's sale of the property for March 31, 1982. Senior Citizens brought a bill in equity seeking a temporary injunction to forestall the tax sale, claiming that the property was exempt from taxation under RSA 72:23, V. Following a hearing, the Superior Court (*Johnson*, J.) temporarily enjoined the city from conducting the tax sale pending a determination of Senior Citizens' tax-exemption claim. The court transferred to this court without ruling the issue of the extent to which Senior Citizens' property is exempt from taxation under RSA 72:23, V.

The city appears to concede that the plaintiff is a charitable organization. Its only argument is that the plaintiff is not entitled to an exemption for the apartment units in the project because the apartments are not "occupied and used" by the corporation for the purpose for which it was established.

 In order to qualify for a tax exemption under RSA 72:23, V, the plaintiff's property must be occupied and used by it for its charitable purposes. *Nature Conservancy v. Nelson*, 107 N.H. 316, 320, 221 A.2d 776, 779 (1966). It must be used directly for the charitable purpose of the corporation. *Wentworth Home v. Portsmouth*, 108 N.H. 514, 516, 238 A.2d 730, 732 (1968). The charitable purpose of Senior Citizens is to provide housing for low-income elderly and handicapped individuals. The actual provision of housing to low-income elderly and handicapped individuals is a direct use of the property by Senior Citizens in the performance of its charitable purposes.

The city argues, however, that the apartment units are not "occupied and used" by the plaintiff within the meaning of RSA 72:23, V because the units are rented to tenants who are in exclusive control of the units. Although we stated in *St. Mary's School v. Concord*, 80 N.H. 436, 438, 118 A. 608, 609 (1922), that real estate rented by a charitable organization is not tax exempt, we have indicated in later cases that not all types of rentals preclude a tax exemption. In *Young Women's Christian Ass'n v. Portsmouth*, 89 N.H. 40, 192 A. 617 (1937), we held that the Young Women's Christian Association was entitled to an exemption for rooms rented to individuals. *Id.* at 44–45, 192 A. at 620.

In *Alton Bay Camp Meeting Asso. v. Alton*, 109 N.H. 44, 242 A.2d 80 (1968), we held that a charitable organization was not entitled to an exemption under RSA 72:23, V, for land leased to cottage owners who were also members of the organization because the owners occupied the land for their own secular purposes. 109 N.H. at 49–50, 242 A.2d at 84–85. We held, however, that the organization was entitled to an exemption for a rooming house in which rooms were rented to persons attending religious services at the camp, because the building was essential to the accomplishment of the organization's charitable purposes. *Id.* at 50, 242 A.2d at 85.

 These cases indicate that if the rentals directly fulfill the organization's charitable purpose, or are necessary for the organization to accomplish its purpose, an exemption will be allowed. *Cf. Wentworth Home v. Portsmouth*, 108 N.H. at 517, 238 A.2d at 732 (organization operating home for individuals with incurable conditions entitled to exemption for building used as housing for personnel essential to furnishing of care). In the present case, the rental of apartments to low-income elderly and handicapped individuals directly fulfills the organization's charitable purpose, and therefore Senior Citizens is entitled to an exemption for the apartment units.

 The city also argues that the plaintiff is not entitled to an exemption for the units because the units are used for business purposes. The fact that the plaintiff collects rent for the units does not indicate that the property is not occupied or used for charitable purposes. We held in *Portsmouth Historical Society v. Portsmouth*, 89 N.H. 283, 285, 197 A. 712, 713 (1938), that the fact that an historical society charged an admission fee to defray operating expenses did not necessarily indicate that the organization's purposes were not charitable, and held that the organization was exempt from taxation. In the present case, the rent paid by tenants is also used to defray operating expenses.

The city's final argument is that if the legislature believed that RSA 72:23, V provided an exemption for property used as housing for the elderly or handicapped, such as that of Senior Citizens, it would have been unnecessary to enact RSA 72:23-d and RSA 72:23-e, which grant exemptions to two named organizations which provide community housing for the elderly. It is true that the legislative histories of these sections indicate that some legislators believed that the sections were necessary to provide tax exemptions for such projects. *See* N.H.S. JOUR. 234 (1970); N.H.S. JOUR. 743 (1965). However, the legislative history of 72:23-f (Supp. 1981), a section

which is similar to RSA 72:23-d and RSA 72:23-e, and which provides a tax exemption for another specific charitable corporation, indicates that some legislators believed that section was not necessary to grant the organization tax-exempt status because the organization was already tax-exempt and that it only was adopted to clarify the tax status of the organization. *See* N.H.S. JOUR. 2192–94 (1977).

██ Because the legislative history of these sections is inconsistent, we do not find reference to them instructive in interpreting RSA 72:23, V. We hold that the apartment units are "occupied and used" by Senior Citizens for the purpose for which it was established, and that Senior Citizens is entitled to an exemption under RSA 72:23, V.

*Remanded.*

All concurred.