Strafford
No. 94-786

THE HOUSING PARTNERSHIP

v.

TOWN OF ROLLINSFORD

July 29, 1996

*Sanders and McDermott,* of Hampton (*Lawrence M. Edelman* on the brief), and *Morris, Forsley & Eggleston, P.A.,* of Hampton (*Lawrence S. Forsley,* orally), for the plaintiff.

*Gregoire, Calivas, Morrison & Indorf,* of Dover (*Chris W. Calivas* on the brief and orally), for the defendant.

*H. Bernard Waugh, Jr.,* of Concord, by brief, for New Hampshire Municipal Association, as *amicus curiae.*

HORTON, J. The defendant, Town of Rollinsford, appeals the order of the Superior Court (*Fauver,* J.) holding that property

owned by the plaintiff, the Housing Partnership, at 466 and 488 Beccaris Drive in the Town of Rollinsford is exempt from local real estate taxes. The defendant asserts that the trial court erred in concluding that the plaintiff was a charity within the meaning of RSA 72:23-*l* (Supp. 1995). The defendant also contends that, even if the trial court was correct in concluding that the plaintiff is a charity, it erred in finding that the plaintiff occupied and used the property for the purposes for which the charity was established as required by RSA 72:23, V (1991) (amended 1994). We reverse.

The plaintiff was incorporated as a nonprofit corporation in New Hampshire in 1988. It is exempt from federal taxes under section 501(c)(3) of the Internal Revenue Code. 26 U.S.C. § 501(c)(3) (1995). Its stated purpose is "[t]o facilitate the development and preservation of decent, safe, and affordable housing for low and moderate income persons." Since its inception, the plaintiff has acquired thirteen multi-family dwellings, with a total of 117 rental units. Among the property owned by the plaintiff are two apartment buildings containing twelve apartments, located at 466 and 488 Beccaris Drive in Rollinsford, acquired by the plaintiff in 1991. In April 1992, the plaintiff filed a property tax exemption/abatement claim with the defendant for the Beccaris Drive properties, asserting an exemption under RSA 72:23, V, which provides a general real estate tax exemption for property occupied and used by charitable organizations. In April 1993, the defendant notified the plaintiff that its application for a property tax exemption/abatement was denied because it failed to meet the requirements of RSA 72:23-k (Supp. 1995), which provides a real estate tax exemption for elderly and disabled nonprofit community housing facilities. The plaintiff subsequently filed a petition with the superior court seeking an exemption/abatement for 1992 and 1993. After a hearing, the trial court concluded that the plaintiff was a charitable organization and qualified for an exemption/abatement for 1992 and 1993 pursuant to RSA 72:23, V. The defendant appealed.

The defendant first contends that the trial court erred by concluding that the plaintiff is a charity. The legislature has defined charitable organization to mean

> a corporation, society or organization established and administered for the purpose of performing, and obligated, by its charter or otherwise, to perform some service of public good or welfare advancing the spiritual, physical, intellectual, social or economic well-being of the general public or a substantial and indefinite segment of the general public that includes residents of the state of New Hampshire, with

no pecuniary profit or benefit to its officers or members, or any restrictions which confine its benefits or services to such officers or members, or those of any related organization. The fact that an organization's activities are not conducted for profit shall not in itself be sufficient to render the organization "charitable" for purposes of this chapter, nor shall the organization's treatment under the United States Internal Revenue Code of 1986, as amended.

RSA 72:23-*l*. This section is consistent with the common law definition of charitable organization. *Id.; see Nature Conservancy v. Nelson*, 107 N.H. 316, 319, 221 A.2d 776, 778–79 (1966).

"[I]n order to qualify as a charitable institution, an obligation must exist to perform the organization's stated purpose to the public, rather than simply to the members of the organization." *Appeal of City of Franklin*, 137 N.H. 622, 625, 631 A.2d 537, 540 (1993). The defendant argues that the plaintiff's stated purpose is too indefinite to qualify it for charitable status.

[T]he public service which plaintiff is to render must be obligatory so as to enable the Attorney General or other public officer to enforce this right against it if the service is not performed. It follows that if the public benefit is limited to that which the plaintiff sees fit to provide at its option or in its uncontrolled discretion the requirements of RSA 72:23 V are not satisfied.

*Id.* (quotation omitted). The purposes for which the plaintiff were organized are sufficiently definite to satisfy this test.

 As noted above, the plaintiff's articles of incorporation establish that its stated purpose is "[t]o facilitate the development and preservation of decent, safe, and affordable housing for low and moderate income persons." In addition, the plaintiff's by-laws establish a number of services provided by the plaintiff. These include: providing public education and advocacy in support of affordable housing; developing affordable housing projects, both home ownership and rentals, that will have long-term affordability; and obtaining financing for affordable housing projects using a combination of private, public, and charitable resources. Moreover, the board of directors are empowered to acquire, construct, or rehabilitate real property, as well as sell, convey, assign, mortgage, or lease any interest in the real property acquired.

These goals are hardly akin to the amorphous goals that we found could neither be measured nor enforced in *Society of Cincinnati v. Exeter*, 92 N.H. 348, 352–54, 31 A.2d 52, 55–56 (1943). In that case,

we concluded that the Society's purpose of fostering patriotism "was to be only such as it might at its option and in its uncontrolled discretion see fit to furnish." *Id.* at 352–53, 31 A.2d at 55. In this case, the plaintiff's goals are more analogous to those at issue in *Nature Conservancy*, 107 N.H. 316, 221 A.2d 776. In that case, the organization was established to conserve natural resources, promote education in this field, and encourage the research of nature conservation. *Id.* at 320, 221 A.2d at 779. We found these goals to be sufficiently definite to establish the plaintiff's status as a charitable organization. *Id.* Similarly, in this case, the plaintiff's purposes are sufficiently objective so as to be enforceable. Accordingly, we conclude that the trial court correctly determined that the plaintiff has established its charitable status.

The defendant next argues that the plaintiff does not qualify for a tax exemption because the Beccaris Drive properties are not "occupied and used by [the charitable organization] for the purposes for which [it was] established" as required by RSA 72:23, V. "Only that part of the property which is used *directly* for charitable purposes is exempt from property tax." *Appeal of C.H.R.I.S.T., Inc.*, 122 N.H. 982, 984, 455 A.2d 1006, 1007 (1982) (emphasis added); *see* RSA 72:23, V (Supp. 1995) (codifying requirement that property be used directly for charitable purposes). Moreover, when the use is "slight, negligible or insignificant" or not "in performance of these public purposes," the plaintiff is not entitled to a tax exemption for the property. *Nature Conservancy*, 107 N.H. at 320, 221 A.2d at 779.

■ "To qualify for an exemption, th[e] land, in addition to being owned by the association, would have to be occupied by the association and used directly by the association for its charitable purposes." *Alton Bay Camp Meeting Asso. v. Alton*, 109 N.H. 44, 49, 242 A.2d 80, 85 (1968). We have recognized that simply because property owned by a charitable organization is rented to individuals who use the property as their living quarters does not prevent the property from being tax-exempt. *See, e.g., Wentworth Home v. Portsmouth*, 108 N.H. 514, 516–17, 238 A.2d 730, 732 (1968). In order for a residence to qualify for a tax exemption, however, the occupancy of the property must be reasonably necessary for the charitable organization to carry out its mission. *See St. Paul's School v. City of Concord*, 117 N.H. 243, 250–55, 372 A.2d 269, 274–77 (1977) (concluding that faculty quarters, student dormitories, and the rectory were tax-exempt, but that property occupied by other staff, parents, guests, alumni, and prospective students was not reasonably necessary to carry out educational purposes and hence not tax-exempt). In *Alton Bay Camp*, a religious association

leased land to individuals willing to participate in the association's activities. *Alton Bay Camp*, 109 N.H. at 49, 242 A.2d at 84. We concluded that because the occupants of the land were "entitled as of right to use and occupy this land directly for their own purposes[,] . . . this negatives a use and occupancy directly for charitable purposes by the association, which are essential requisites for an exemption." *Id.* at 50, 242 A.2d at 85. In other words, our cases illustrate that when property is owned and rented commercially as an adjunct to a charitable purpose, no tax exemption is allowed under RSA 72:23, V.

The question in this case, therefore, is whether housing provided by the plaintiff is used and occupied directly for the charitable purpose or simply an adjunct to the charitable purpose.

The plaintiff argues that our holding in *Senior Citizens Housing Development Corporation of Claremont v. City of Claremont*, 122 N.H. 1104, 453 A.2d 1307 (1982), controls the outcome of this case. In *Senior Citizens*, we observed "that if the rentals directly fulfill the organization's charitable purpose, or are necessary for the organization to accomplish its purpose, an exemption will be allowed." *Senior Citizens*, 122 N.H. at 1108, 453 A.2d at 1309–10. That case, however, differs from the case at bar. In *Senior Citizens*, the organization provided housing for low-income elderly and handicapped individuals. *Id.* at 1106, 453 A.2d at 1308. The rent paid by the tenants was based on twenty-five percent of the tenant's income; the additional cost of the housing was subsidized by the United States Department of Housing and Urban Development (HUD). *Id.* Moreover, although the court in *Senior Citizens* did not explicitly recognize the specially adapted nature of elderly and disabled housing, we note that such housing is often modified to accommodate the needs of the residents, *see* Supportive Housing for the Elderly, 24 C.F.R. pt. 889 (1995); Supportive Housing for Persons with Disabilities, 24 C.F.R. pt. 890 (1995), and the occupancy of such housing is necessary in order for elderly and disabled tenants to receive the special benefits this housing provides.

In comparison, the plaintiff's charitable purpose, as noted above, is "[t]o facilitate the development and preservation of decent, safe, affordable housing for low and moderate income persons." At the time of trial, the rents in the current case were at close to market levels. The trial court reasoned that the benefit provided by the plaintiff was not below-market rents, but rather rent stability. The court concluded that since rent levels were not keyed directly to market rates, but rather their affordability to low- and moderate-income persons, the rental of the property in question provided a

substantial benefit. Rents charged by the plaintiff are based on the operating costs of the properties including debt service, utility costs, maintenance expenses, and a management fee charged by the plaintiff, must cover all of these operating costs, and are increased based on the increase in these costs. Rental fees charged to tenants do not vary depending on the income level of the tenant.

In contrast, the benefit to the tenants in *Senior Citizens* did not depend on the fluctuating market costs. Instead, as noted above, rents were fixed at twenty-five percent of the tenants' income, and the rest was subsidized by HUD. In addition, the structural aspects of elderly and disabled housing provided a 'direct use' of the property in that case. No similar aspects of the property in this case make the occupancy of the Beccaris Drive property reasonably necessary to fulfill the plaintiff's charitable purpose. The indefinite and prospective benefit of rent stability is not the direct use and occupation of the property that RSA 72:23, V requires in order for a charitable organization to receive a tax exemption. *See Society of Cincinnati*, 92 N.H. at 350–51, 31 A.2d at 54–55.

The plaintiff has failed to demonstrate that the rental of the units is not simply an adjunct to its charitable purpose. The Beccaris Drive tenants pay close to market rates and receive no special benefits from living in the property, and as a result the occupancy of the property by the tenants is not a direct use of the property for the plaintiff's charitable purposes. *See Alton Bay Camp*, 109 N.H. at 50, 242 A.2d at 85. In other words, the plaintiff in this case has failed to demonstrate that the tenants' occupancy of the Beccaris Drive property is in any significant way different from tenants occupying housing run by a noncharitable organization.

The New Hampshire Municipal Association (Municipal Association), as *amicus curiae*, argues that RSA 72:23-k, providing a general exemption for charitable, nonprofit housing for the elderly and disabled, controls real estate tax exemptions for housing projects. In order to qualify for an exemption under RSA 72:23-k, a housing or health care facility must provide housing for elderly or disabled persons and be controlled by a charitable, nonprofit organization. RSA 72:23-k, I. Moreover, the owner of the housing project must make a payment in lieu of taxes to defray the costs of municipal, non-utility, services. RSA 72:23-k, II. The legislative history indicates that RSA 72:23-k was enacted to counteract a HUD directive, which prevented housing projects from voluntarily entering into agreements with towns to make payments in lieu of taxes. *See* N.H.S. JOUR. 611 (1987); N.H.H.R. JOUR. 854 (1987). The rules of the department of revenue administration, however, illustrate

that RSA 72:23-k has not been applied only to those facilities that receive HUD funds or are subject to HUD restrictions on voluntary payments to municipalities in lieu of taxes. *See* N.H. ADMIN. RULES, Rev 404.02. But RSA 72:23-k is limited to organizations providing housing to the elderly and disabled, individuals in need of special accommodations. The Municipal Association points out, it would be inconsistent for the legislature to require housing projects for elderly or disabled persons to make payments in lieu of taxes but to allow all other charitable housing projects to receive the tax exemption without making such payments. We do not need to decide this issue, as the Municipal Association urges us to do, because even if we were to assume that RSA 72:23-k was not intended to limit available exemptions under RSA 72:23, V, as discussed above the plaintiff does not qualify for a tax exemption under the latter provision.

The trial court pointed to other services provided by the plaintiff, such as interest-free loans to assist tenants through times of difficulty and the referral of tenants to social service agencies, to support its ruling. The plaintiff has failed to show that the use and occupancy of the Beccaris Drive property is reasonably necessary to provide these services. *See St. Paul's School*, 117 N.H. at 254, 243 A.2d at 274. Accordingly, we reverse the decision of the trial court.

*Reversed.*

All concurred.