Board of Tax and Land Appeals
No. 99-752

APPEAL OF THE CITY OF LACONIA

(New Hampshire Board of Tax and Land Appeals)

August 31, 2001

*Devine, Millimet & Branch, P.A.*, of Manchester (*George R. Moore* and *Daniel E. Will* on the brief, and *Mr. Moore* orally), for the plaintiff.

*Mitchell & Bates, P.A.*, of Laconia (*Walter L. Mitchell* on the brief and orally), for the defendant.

*H. Bernard Waugh, Jr.*, of Concord, by brief, for the New Hampshire Municipal Association, as *amicus curiae*.

DALIANIS, J. The defendant, the City of Laconia (City), appeals the decision of the New Hampshire Board of Tax and Land Appeals (BTLA) granting a charitable tax exemption to property owned by the plaintiff, the Taylor Home (Home). We affirm.

The record reveals the following undisputed facts. The Home operates a large elderly housing complex in Laconia, including independent living, assisted living, and nursing care facilities. Residents pay entrance fees and monthly fees. The Home sought a tax abatement for tax year 1996 and a complete exemption for tax year 1997, with an alternative claim for an abatement for tax year 1997. The BTLA denied the tax abatement claims, but granted the full tax exemption. The BTLA ruled that all aspects of the Home's operations are tax-exempt under the terms of the original legislative charter granted in 1907. *See* Laws 1907, ch. 242. This appeal followed.

On appeal, the City has the burden of showing that the BTLA's decision was "clearly unreasonable or unlawful." RSA 541:13 (1997); *see* RSA 71-B:12 (1991). The BTLA's factual findings are deemed *prima facie* lawful and reasonable. RSA 541:13; *see also Appeal of Kiwanis Club of Hudson*, 140 N.H. 92, 93 (1995).

The City first argues that the BTLA erroneously ruled that the Home's 1907 charter governed the Home's entitlement to a charitable tax exemption. We review this question *de novo*. *See Appeal of Kiwanis Club of Hudson*, 140 N.H. 92, 94 (1995). We do not address this argument at length, however, because, despite this ruling, the BTLA actually applied the standard the City urges. *See* RSA 72:23-I

(Supp. 2000). The BTLA reviewed the Home's operations in light of the definition of the term "charitable" contained in RSA 72:23-l.

The City asserts that the 1907 charter was repealed by chapter 115 of the Laws of 1913, the predecessor to the current law governing charitable exemptions, RSA 72:23 (Supp. 2000). We agree. We have previously interpreted the 1913 law as establishing a "uniform scheme for tax exemptions of charitable institutions," *Hedding &c. Association v. Epping*, 88 N.H. 321, 322 (1937), and repealing "all special exemptions." *Trustees &c. Academy v. Exeter*, 90 N.H. 472, 479 (1940); *see also Alton Bay Camp Meeting Asso. v. Alton*, 109 N.H. 44, 47 (1968).

The Home makes several arguments against this construction, apparently assuming that the test for tax exemption was more liberal under the 1907 charter than under the 1913 law. In fact, the converse is true. The 1907 charter required the Home to use its property "exclusively" for its charitable purposes, *see* Laws 1907, ch. 242, while the 1913 law required only that the property be "owned and occupied" by the organization for its charitable purposes, *see* Laws 1913, ch. 115. *See Trustees &c. Academy*, 90 N.H. at 503. This case is thus distinguishable from *Christian Science Pleasant View Home v. City of Concord*, 117 N.H. 239, 241 (1977), where the special act at issue contained a more liberal test.

The City next argues that the Home is not a "charitable" organization under RSA 72:23-l, which defines "charitable" as follows:

> The term "charitable" as used to describe a corporation, society or other organization within the scope of this chapter, including RSA 72:23 . . . shall mean a corporation, society or organization established and administered for the purpose of performing, and obligated, by its charter or otherwise, to perform some service of public good or welfare advancing the spiritual, physical, intellectual, social or economic well-being of the general public, or a substantial and indefinite segment of the general public . . . with no pecuniary profit or benefit to its officers or members, or any restrictions which confine its benefits or services to such officers or members, or those of any related organization. The fact that an organization's activities are not conducted for profit shall not in itself be sufficient to render the organization "charitable" for purposes of this chapter, nor shall the organization's treatment under the United States Internal Revenue Code of 1986, as amended. This

section is not intended to abrogate the meaning of "charitable" under the common law of New Hampshire.

■ The BTLA made several factual findings to support its conclusion that the Home was a charitable organization. For instance, the BTLA found that the Home has a charitable purpose and is obligated to act consistent with that purpose. The BTLA further found that the Home provides a public service by "alleviat-[ing] the burden on government of caring for the elderly, particularly those of limited financial means." The Home commits to caring for its residents for life regardless of their ability to pay and "does not transfer residents whose funds have been depleted to medicaid facilities." In light of these factual findings, which the City does not dispute on appeal, the BTLA's ruling that the Home is a "charitable" organization is neither unreasonable nor unlawful. *See Appeal of City of Franklin*, 137 N.H. 622, 626 (1993) (Franklin Home for Aged is charitable organization based upon fifty-year history of providing "charitable health care and residential maintenance to . . . clients at below cost rates and lower than area Medicaid and Medicare facilities can offer").

The City next contends that the Home's property is not used and occupied directly for its charitable purpose. In support, the City alleges that the Home imposes "[e]ntry fees [that] average well over $100,000" and requires residents in the independent living units to pay monthly fees of between $500 and $1000. The City also asserts that the Home's services are not offered at rates substantially below market rate and that relatively few of the Home's residents receive financial assistance.

These assertions are not supported by the record. For instance, the executive director testified that, in fact, the Home offers its assisted living units at approximately 50% of the market rate. The executive director also testified that most of the residents in the independent living units do not need financial assistance because they pay monthly fees of between $125 and $270 per month. Moreover, the BTLA found, and the City does not dispute that "[w]ith respect to its current residents, [t]he . . . Home has provided over $2 million in entry fee assistance, annually provides $700,000 in monthly fee assistance, and anticipates that 51.54% of the current residents will require assistance for future care because their assets will be depleted prior to the end of their lives."

■ Even if true, the City's allegations would not necessarily disqualify the Home for a charitable tax exemption. *See Appeal of Kiwanis Club of Hudson*, 140 N.H. at 94-95 (rentals do not

disqualify organization for charitable purpose provided they directly fulfill organization's charitable purpose and are necessary to achieve purpose). The BTLA found that the Home's independent living units, assisted living units, and nursing care facility, "work in concert to fulfill [its] charitable mission." The BTLA found, in particular, that the independent living units

> [are] one of the main "money engines" generating funds necessary to carry out [the] Home's legislative purpose. Just as fund raising is the lifeblood of most charitable organizations, cost shifting at [the] Home provides a significant source of funds for providing charitable assistance to older residents requiring intensive assisted or nursing care services.

The City does not dispute these findings on appeal, and thus we hold that the BTLA did not err in granting the Home a charitable tax exemption. *See id.*

*Affirmed.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.