Hillsborough-northern judicial district
No. 2007-230

# TOWN OF PETERBOROUGH

### v.

# THE MACDOWELL COLONY, INC.

Argued: January 16, 2008
Opinion Issued: March 14, 2008

2

*Donahue, Tucker & Ciandella, PLLC*, of Exeter (*Robert M. Derosier* on the brief and orally), for the petitioner.

*Orr & Reno, P.A.*, of Concord (*William L. Chapman* on the brief and orally), for the respondent.

HICKS, J. The petitioner, Town of Peterborough (town), appeals an order of the Superior Court (*Abramson*, J.) ruling that the respondent, The MacDowell Colony, Inc. (MacDowell), is entitled to a tax exemption under RSA 72:23, V (2003) for the 2005 tax year. We affirm.

The following facts were either recited in the trial court's order or appear in the record. MacDowell is a nonprofit corporation founded in 1907 by Edward and Marian MacDowell. Edward was an internationally-recognized composer, photographer, poet and journeyman architect. MacDowell's 1986 Restated Certificate of Incorporation states its purpose, in language unchanged from the original 1907 Certificate of Incorporation, as follows:

> To promote the arts of music, literature and the drama, architecture, painting and sculpture, and the other fine arts; to encourage study, research and production of all branches of art; to develop a sympathetic understanding of their correlation and appreciation of their value; and to broaden their influence; and thus carry forward the life purpose of Edward MacDowell;

> To acquire by gift and to develop, in furtherance of such purpose, the home of Edward MacDowell and his wife in Peterborough, in the State of New Hampshire, proposed by them to be made a place for work and companionship of students in all the arts, and to maintain the same as their home meanwhile, and to apply any funds of the corporation for their benefit during their respective lives, as well as for the other objects of the corporation, and to acquire by gift or purchase such other property in that State and elsewhere as shall be deemed desirable in accomplishing the objects of the corporation.

MacDowell owns approximately 450 acres of land in Peterborough on which are located thirty-two art studios and various common buildings (collectively, the Colony). MacDowell operates an artist-in-residence program on the property. Each artist admitted to the program (a "Colony Fellow") may spend up to eight weeks at the Colony, where he or she is provided a studio in which to create art. The studios are isolated from one another and from the common buildings and provide, in the trial court's words, "a secluded, natural environment in which to work."

Eight studios are equipped with beds and full bathrooms, enabling the artists assigned to those studios to reside in them during their stay. The artists assigned to the remaining studios are housed in three on-site

dormitory buildings. Other common buildings include Colony Hall, which contains dining, laundry and communication facilities as well as a hall in which artists may socialize and informally present their work; Savidge Library, which provides twenty-four-hour research facilities and an additional venue for the artists to present their work; and Hillcrest, which is Edward and Marian MacDowell's former home and is now used for visitors, guests, meetings and special events.

MacDowell's artist-in-residence program operates throughout the year, in three separate four-month-long sessions. The program is open to both professional and emerging artists. Selection for admission is based primarily upon talent. Applicants must submit a two-page application form, a project description, two references and a $20.00 application fee, which may be waived. Applications are reviewed by separate admission panels for each of the artistic disciplines involved. The trial court noted that the admission panels "are comprised of a revolving group of distinguished professionals in each artistic discipline." (Quotation omitted.) In 2005, the panels represented the following disciplines: "literature (poets, playwrights, fiction and non-fiction writers, and translators); music composition; visual arts; film/video; interdisciplinary arts; and architecture."

The admission panels rank applications by degree of talent or excellence, using a shared rating scale. No consideration is given to the applicants' financial status, although travel grants are available for artists in financial need. Between two applicants of equal rank and with similar space requirements, preference is given to an applicant who has not previously been a Colony Fellow. In 2005, 246 artists, including one New Hampshire resident, were selected from 1765 applicants to receive fellowships.

MacDowell sought a charitable tax exemption in 2005 for 420 acres of its land and forty of its buildings (the remaining thirty acres and one building were apparently not used directly for MacDowell's charitable mission). *See* RSA 72:23, V. Although the town previously had treated MacDowell's property as tax exempt, it denied the application, concluding, as averred by a town selectman, that MacDowell was not a public charity meeting the requirements of RSA 72:23, V and RSA 72:23-*l* (2003). The parties agreed to resolve their dispute through a declaratory judgment action, and, in summary judgment rulings, the trial court determined that MacDowell was entitled to the tax exemption.

On appeal, the town argues that MacDowell is not a public charity entitled to a tax exemption under RSA 72:23, V because: (1) it provides benefits only to "a very limited and insubstantial group"; (2) "it has complete discretion over who will receive its benefits"; and (3) it has "failed to meet the statutory requirement that residents of New Hampshire [be] admitted to a charity's benefits."

In an appeal from an order on motions for summary judgment, we apply the following standard of review:

> When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If our review of the evidence does not reveal a genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. We review the trial court's application of the law to the facts *de novo*.

*Lacasse v. Spaulding Youth Ctr.*, 154 N.H. 246, 248 (2006) (quotation omitted).

██ "It is elemental that determination of the rights of [MacDowell] to an exemption from taxation is statutory. The existence and extent of exemptions depends on legislative edict." *E. Coast Conf. of the Evangelical Covenant Church of America v. Town of Swanzey*, 146 N.H. 658, 661 (2001) (quotation omitted). "In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole." *Lacasse*, 154 N.H. at 250 (quotation omitted). Accordingly, we will overturn the trial court's decision "if we find that the [court] misapprehended or misapplied the law." *E. Coast Conf.*, 146 N.H. at 661 (quotation omitted). We note that "[t]he legislative purpose to encourage charitable institutions is not to be thwarted by a strained, over-technical and unnecessary construction." *Young Women's Christian Ass'n v. Portsmouth*, 89 N.H. 40, 42 (1937) (quotation omitted).

We begin by examining the language of the relevant statutes. *See Lacasse*, 154 N.H. at 250. RSA 72:23, V provides an exemption from taxation for:

> The buildings, lands and personal property of charitable organizations and societies organized, incorporated, or legally doing business in this state, owned, used and occupied by them directly for the purposes for which they are established, provided that none of the income or profits thereof is used for any other purpose than the purpose for which they are established.

In turn, RSA 72:23-*l* defines charitable as follows:

> The term "charitable" as used to describe a corporation, society or other organization within the scope of this chapter, including RSA 72:23 . . . , shall mean a corporation, society or organization

established and administered for the purpose of performing, and obligated, by its charter or otherwise, to perform some service of public good or welfare advancing the spiritual, physical, intellectual, social or economic well-being of the general public or a substantial and indefinite segment of the general public that includes residents of the state of New Hampshire, with no pecuniary profit or benefit to its officers or members, or any restrictions which confine its benefits or services to such officers or members, or those of any related organization. The fact that an organization's activities are not conducted for profit shall not in itself be sufficient to render the organization "charitable" for purposes of this chapter . . . .

■ In *ElderTrust of Florida, Inc. v. Town of Epsom*, 154 N.H. 693 (2007), we set forth four factors for determining whether an organization qualifies for a charitable tax exemption under RSA 72:23, V and RSA 72:23-*l*; namely, whether:

(1) the institution or organization was established and is administered for a charitable purpose; (2) an obligation exists to perform the organization's stated purpose to the public rather than simply to members of the organization; (3) the land, in addition to being owned by the organization, is occupied by it and used directly for the stated charitable purposes; and (4) any of the organization's income or profits are used for any purpose other than the purpose for which the organization was established. Under the fourth factor, the organization's officers or members may not derive any pecuniary profit or benefit.

*ElderTrust*, 154 N.H. at 697-98.

■ The town first contends that "MacDowell is not a public charity because the creative artists who gained access to the Peterborough property in 2005 were not a substantial and indefinite segment of the general public." The town's argument assumes that the artists admitted to the artist-in-residence program are its sole beneficiaries. In its tax-exempt survey, however, MacDowell asserted that its mission advances "the intellectual well being of the *general public*." (Emphasis added.) The trial court concurred, at least in part, with MacDowell's assertion, concluding that by "supporting the artistic process," MacDowell benefits "at the very least, artists across the world, and, in a broader sense, the general public." The court further concluded that MacDowell's artist-in-residence "program primarily benefits society as a whole." We agree. Therefore, performance of

MacDowell's mission satisfies RSA 72:23-*l* without inquiry into whether Colony Fellows constitute "a substantial and indefinite segment of the general public," RSA 72:23-*l*.

■ The town nevertheless urges us to reject the proposition that "the beneficiary of the Peterborough property is the general public based upon what [the admitted artists] may or may not do at the Peterborough property." The town's argument, however, conflates the second and third *ElderTrust* factors—the requirements of public service and of use and occupancy. The relevant inquiry is not whether the public, or a substantial and indefinite segment of it, benefits from the organization's *property*, but whether the public, or a substantial and indefinite segment thereof, benefits from the organization's *performance of its stated purpose. See ElderTrust*, 154 N.H. at 697-98. Thus, the town's argument that "MacDowell's service is room, board, and a studio, which is entirely consumed by the creative artists invited to the Peterborough property," misses the mark. While MacDowell does provide those services to the Colony Fellows, its charitable purpose is, as the trial court determined, "promotion of the arts." The provision of that service benefits a far greater segment of society than the artists who actually use MacDowell's property and, in so doing, serves the "general public" as that term is used in RSA 72:23-*l*.

■ For similar reasons, we reject the town's contention that "MacDowell cannot ride upon the coattails of the individual artists to receive a public charitable tax exemption" where: (1) it is not MacDowell, but the individual artists, who produce art at the Colony; and (2) there is no requirement that Colony Fellows actually produce art while at the Colony. Again, MacDowell's charitable purpose is not to actually create art but to promote it; that is, in the words of its charter, "to encourage study, research and production of all branches of art; to develop a sympathetic understanding of their correlation and appreciation of their value; and to broaden their influence." It is MacDowell, not the individual artists, that performs that stated purpose.

■■ The town next contends that because MacDowell's application and admission procedures give it "total discretion over who will receive its benefits," it has no enforceable obligation to perform a charitable service. In determining whether an organization has an enforceable obligation to perform a charitable service, "we look to both its charter or organizational statements and its actions taken pursuant to those statements." *E. Coast Conf.*, 146 N.H. at 662. The trial court concluded that MacDowell's charter requires the corporation to "use its property to promote the arts, and more specifically, make the property a place for work and companionship of

students in the arts. Further, MacDowell is obligated to use any funds of the corporation to fulfill this purpose." (Citation omitted.) We agree. MacDowell's charter requires it to acquire Edward and Marian MacDowell's home in Peterborough and "to develop [it, in furtherance of MacDowell's stated charitable purpose, into] . . . a place for work and companionship of students in all the arts." The charter also requires MacDowell "to apply any funds of the corporation for . . . the . . . objects of the corporation." We conclude that MacDowell's charter "sufficiently circumscribe[s] its discretion and define[s] an enforceable charitable obligation." *ElderTrust*, 154 N.H. at 700.

The town contends, however, that the trial court erred by examining only MacDowell's charter, and failing to consider its actions, in determining whether it is obligated to provide a service of public good or welfare. The town asserts that "MacDowell has chosen to perform [its] mission" through a program restricted to artists it considers to be of the highest talent and argues that because MacDowell's application and admission procedures give it "total discretion over who will receive its benefits," it has no enforceable obligation to perform a charitable service. In support, the town cites the following passage from *ElderTrust*:

> [T]he public service which [the organization] is to render must be obligatory so as to enable the Attorney General or other public officer to enforce this right against it if the service is not performed. It follows that if the public benefit is limited to that which the plaintiff sees fit to provide at its option or in its uncontrolled discretion the requirements of RSA 72:23[,] V are not satisfied.

*ElderTrust*, 154 N.H. at 699 (quotation omitted).

■ The town's argument again conflates two of the requirements for a charitable tax exemption: public service and obligatory service. The obligatory service requirement relates not to whom the service is provided but to whether the organization is required to provide the service at all. Thus, as we explained in *ElderTrust*: "The purpose of the obligation requirement is to prevent organizations, even if they operate for charitable purposes, from obtaining the benefits of a tax exemption without providing some service of public good." *Id.* As noted above, MacDowell is obligated by its charter to perform a charitable service. In addition, contrary to the town's contention, the trial court did consider MacDowell's "actions taken pursuant to [its organizational] statements," *E. Coast Conf.*, 146 N.H. at 662, and concluded that "for approximately 100 years, MacDowell's Charter has been interpreted as obligating MacDowell to further the charitable purpose of promoting the arts; and MacDowell has administered this

purpose through its artist-in-residence program." Upon our review of the record, we agree with the trial court's conclusion.

■■ The town also argues that MacDowell fails to meet the statutory definition of a charity because it selected only one New Hampshire resident as a Colony Fellow in 2005. The town represents it as undisputed "that RSA 72:23-*l* requires 'residents' of New Hampshire to receive a charity's benefits." RSA 72:23-*l* actually requires, in pertinent part, that a charitable organization's obligatory public service "advanc[e] the spiritual, physical, intellectual, social or economic well-being of the general public *or* a substantial and indefinite segment of the general public that includes residents of the state of New Hampshire." RSA 72:23-*l* (emphasis added). We read the phrase "that includes residents of the state of New Hampshire," as modifying "a substantial and indefinite segment of the general public." *Id.* We find it implicit that the term "general public" automatically includes residents of New Hampshire. Accordingly, a specific inquiry into the organization's impact upon New Hampshire residents is necessary only when the organization serves a narrower population than the general public, *i.e.*, in the statute's words, "a substantial and indefinite segment of the general public." *Id.* As we have concluded that MacDowell's public service advances the intellectual well-being of the general public, we need not undertake a more specific inquiry.

Notably, the trial court went further, concluding that "MacDowell's location in Peterborough has contributed immensely to the artistic culture of New Hampshire." The court reasoned:

> Colony Fellows participate in and contribute to promoting the arts in Peterborough by donating works to the Peterborough library, or offering to judge poetry contests. While it is true that Colony Fellows have the option of engaging in such activities in Peterborough, such artistic contributions occur only because MacDowell maintains its artist-in-residence program in Peterborough.

The record supports these findings.

■■ The town further contends that if it is the art created by Colony Fellows that constitutes the public benefit, "then the profits from that art must be accounted for," because, under RSA 72:23, V, none of the income or profits of the artist-in-residence program may be used for any purpose other than that for which MacDowell was established. The town asserts that the art is owned by the artists, who may sell or do what they please with it. As MacDowell points out, however, RSA 72:23, V's prohibition against private inurement applies to it, not the Colony Fellows. *See*

*ElderTrust*, 154 N.H. at 698 (requiring for charitable tax exemption that "any of *the organization's* income or profits are [not] used for any purpose other than the purpose for which the organization was established" (emphasis added)).

Finally, the town argues that certain programs facilitated by MacDowell, but provided by its artists in residence on a purely voluntary basis, do not qualify MacDowell for public charitable status. We need not address this argument, as MacDowell relies solely upon its artist-in-residence program as satisfying its public service requirement, and we have found that program sufficient. Similarly, we need not address the town's contention that we should reject MacDowell's argument that it is similar to other "self-selecting" groups, as we have not adopted that reasoning in our analysis. For the foregoing reasons, we affirm the trial court's order.

*Affirmed.*

BRODERICK, C.J., and GALWAY, J., concurred; DALIANIS, J., with whom DUGGAN, J., joined, concurred specially.

DALIANIS, J., concurring specially. Although I concur in the court's judgment that the respondent, The MacDowell Colony, Inc. (MacDowell), is a charitable organization entitled to a tax exemption under RSA 72:23, V (2003) for the 2005 tax year, I write separately to explain my reasoning, which differs in some respects from that of the majority.

The petitioner, Town of Peterborough (Town), appeals the trial court's grant of summary judgment to MacDowell. When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the nonmoving party. *Lacasse v. Spaulding Youth Ctr.*, 154 N.H. 246, 248 (2006). If our review of the evidence does not reveal a genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

The sole issue in this appeal, broadly speaking, is whether MacDowell is a charitable organization. While at oral argument, the Town asserted that one of the issues on appeal was whether MacDowell uses and occupies all or only part of its Peterborough property directly for its stated charitable purposes, *see* RSA 72:23, V, the Town failed to brief this argument. Thus, it is deemed waived. *See Herman v. Monadnock PR-24 Training Council*, 147 N.H. 754, 758 (2002).

To determine whether MacDowell is a charitable organization, we must look to RSA 72:23-*l* (2003), which defines the word "charitable" as used to

describe an organization, and to our common law definitions of that term as RSA 72:23-*l* expressly states that it was not intended to abrogate those definitions.

For an organization to be deemed "charitable" under RSA 72:23-*l*, it must be:

> established and administered for the purpose of performing, and obligated, by its charter or otherwise, to perform some service of public good or welfare advancing the spiritual, physical, intellectual, social or economic well-being of the general public or a substantial and indefinite segment of the general public that includes residents of the state of New Hampshire, with no pecuniary profit or benefit to its officers or members, or any restrictions which confine its benefits or services to such officers or members, or those of any related organization.

In *ElderTrust of Florida, Inc. v. Town of Epsom*, 154 N.H. 693, 697-98 (2007), we summarized the requirements of RSA 72:23-*l* in the first two factors of our four-factor test. These two factors are: (1) whether the organization is established and administered for a charitable purpose; and (2) whether it has an obligation to perform its stated purpose to the public rather than simply to its members. *ElderTrust*, 154 N.H. at 697-98. The other two factors of the *ElderTrust* test, whether the land, in addition to being owned by the organization, is occupied by it and used directly for the stated charitable purpose and whether any of the organization's income or profits are used for any purpose other than the purpose for which the organization was established, mirror the requirements of RSA 72:23, V and, as previously discussed, are not at issue here. *Id.*

Additionally, we must look to the common law definition of "charitable," which is derived from the law of charitable uses and charitable trusts. *See Davie v. Association*, 91 N.H. 494, 495 (1941) (to determine whether an organization is charitable for tax-exemption purposes, "resort must be had to the accepted doctrine respecting charitable uses, and that institution is charitable the property and funds of which are devoted to such purposes as would support the creation of a valid charitable trust" (quotation omitted)); *Society of Cincinnati v. Exeter*, 92 N.H. 348, 352 (1943) (relying, in part, upon RESTATEMENT OF TRUSTS to determine whether an organization is charitable); *Greater &c. Girl Scout Council v. Pelham*, 100 N.H. 24, 26 (1955) (organization is charity because its primary objective is to train young people for citizenship, which is a charitable purpose according to the RESTATEMENT OF TRUSTS); *Nature Conservancy v. Nelson*, 107 N.H. 316, 317-18 (1966) (defining "charitable" by relying, in part, upon RESTATEMENT (SECOND) OF TRUSTS). *But see St. Paul's School v. City of Concord,*

117 N.H. 243, 248 (1977) (although schools may be considered charitable organizations for purposes of charitable trust doctrine, they are not charitable organizations for purposes of tax exemption under RSA 72:23, V; for tax exemption purposes, schools are governed by RSA 72:23, IV).

Generally, charitable purposes fall into the following categories: (1) relieving poverty; (2) promoting health; (3) advancing education; (4) aiding religion; (5) providing governmental or municipal facilities and services; and (6) other purposes that are beneficial to the community. *See* RESTATEMENT (THIRD) OF TRUSTS § 28 (2003); RESTATEMENT (SECOND) OF TRUSTS § 368 (1959); G. G. BOGERT & G. T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES §§ 373-78 (2d ed. rev. 1991).

According to MacDowell's articles of incorporation, its charitable purposes are to:

> promote the arts of music, literature and the drama, architecture, painting and sculpture, and the other fine arts; to encourage study, research and production in all branches of art; to develop a sympathetic understanding of their correlation and appreciation of their value; and to broaden their influence; and thus carry forward the life purpose of Edward MacDowell.

To accomplish these purposes, the articles of incorporation provide that the organization is to "acquire by gift and to develop . . . the home of Edward MacDowell and his wife at Peterborough, in the State of New Hampshire" and to acquire any other property as necessary to accomplish these purposes. The MacDowell home in Peterborough, in particular, is to be "a place for work and companionship of students in all the arts, and to maintain the same as their home meanwhile." Any funds of the organization are to be applied for the benefit of the students "during their respective lives."

MacDowell's purposes fall into the third general category of charitable purposes, advancing education. Generally, the purpose of MacDowell is to provide room, board and living expenses for students of art to study, research and produce art. *See* BOGERT & BOGERT, *supra* § 375, at 141, 145, 149 (arts education is a charitable purpose, promoting research is a charitable purpose and providing room, board and financial assistance to students is a charitable purpose). Alternatively, MacDowell's purposes fall into the sixth category, other purposes that are beneficial to the community. *See* RESTATEMENT (THIRD) OF TRUSTS, *supra* § 28 comment *l* on clause f, at 21. ("[A] trust is charitable if its purpose is to promote the arts and culture.") Thus, MacDowell meets the first factor of the *ElderTrust* four-factor test.

To qualify as a charitable organization, MacDowell must also meet the second factor of the ElderTrust four-factor test—it must be obligated to perform its stated purposes to the public, rather than to its own members. *ElderTrust*, 154 N.H. at 697-98. There are two components to this factor. The first concerns whether MacDowell's articles of incorporation and the like actually obligate the organization to use its property for its stated charitable purposes. *See Society of Cincinnati*, 92 N.H. at 352-53. The second concerns whether the general public or an indefinite segment thereof are the beneficiaries of the services MacDowell is obligated to provide. *See Nature Conservancy*, 107 N.H. at 317 (to qualify as a charitable organization, the organization "must be under obligation to provide to the general public, or some indefinite segment of it, certain benefits of the kind usually provided by charitable organizations"); *E. Coast Conf. of the Evangelical Covenant Church of America v. Town of Swanzey*, 146 N.H. 658, 662 (2001) ("The test of the public character of a charitable institution is not that all of the public is admitted to its benefits, but that an indefinite number of the public are so admitted, that its benefits are not restricted to its corporate members." (quotation omitted)). The Town's challenge to the trial court's ruling in this case focuses exclusively upon these two components of the second *ElderTrust* factor.

Contrary to the Town's assertions, MacDowell's articles of incorporation oblige it to use its property for its stated charitable purpose. We held in *Society of Cincinnati* that an organization's charitable purposes are obligatory when its charter dedicates certain property to these purposes. *See Society of Cincinnati*, 92 N.H. at 352-53.

> When and not until property becomes devoted to use for the benefit of the public, or some class of persons who may be reasonably regarded as part of the public, does a charitable trust exist. If there is some trust of public service it must be assignable predominantly, or in ascertainable proportions to definite property, to subject it to public enforcement.

*Id.* at 357. MacDowell's articles of incorporation oblige the organization to devote the Peterborough property to the organization's charitable purposes and, therefore, are sufficiently definite to be enforceable. *See ElderTrust*, 154 N.H. at 700; *The Housing Partnership v. Town of Rollinsford*, 141 N.H. 239, 241-42 (1996).

To my mind, the more difficult question is whether the general public or an indefinite segment thereof are the beneficiaries of the services MacDowell is obligated to provide. While admittedly the individuals who actually receive the room, board and living expenses from a fellowship at MacDowell are relatively few in number, this is not dispositive. Receiving a

fellowship to MacDowell is like receiving a prize or an award for excellence in art, the benefits of which "are of a two-fold nature." *Sheen v. Sheen*, 8 A.2d 136, 138 (N.J. Ch. 1939). Obviously, the individual fellows benefit, but "an indefinite number of persons in the United States, i.e., the general public, . . . necessarily receive the benefits" of the art produced not only by the artists who become fellows, but the other artists who compete to become them. *Id.*; *see also Ashmore v. Newman*, 183 N.E. 1, 3, 9 (Ill. 1932) (gift setting aside $2,000 to be invested in interest-bearing securities and directing that interest be paid annually to top-ranking graduate of certain high school and gift setting aside $1,000 to be invested in interest-bearing securities and directing that interest be paid to boy or girl in certain county for producing best calf or pig were charitable because they encouraged students to compete for them and, therefore, tended to advance learning and farming); *In re McKenzie's Estate*, 38 Cal. Rptr. 496, 497, 499 (Dist. Ct. App. 1964) (trust that offers a "reward" to a person who discovers the cause of a certain ailment and provides a cure to the same is charitable even though the "reward" goes to only one person; "[t]he fact that a particular individual some day may qualify to receive the reward is but the instrumentality through which the benefits that will be bestowed upon the public are brought about").

Thus, as the RESTATEMENT (THIRD) OF TRUSTS notes, where a scholarship, prize or award is at issue, "[i]t does not matter . . . that . . . only one student or two may receive [it] . . . as long as the potential class of recipients will be drawn from an indefinite group . . . rather than from a group so narrowly defined (e.g., the settlor's descendants or relatives)" as to make the organization a private charity rather than a public one. RESTATEMENT (THIRD) OF TRUSTS, *supra* § 28 general comment *a(1)* at 11; *see Brady v. Ceaty*, 207 N.E.2d 49, 49, 50 (Mass. 1965) (that trust provided for award to go to "one or more deserving boys or girls," rather than a larger number was "immaterial . . . since the purpose of the trust was to promote education and the class of persons from whom the selection was to be made was indefinite in extent") (quotation omitted)). As MacDowell accepts applications for its fellowships from anyone, the group from which it selects fellows necessarily is sufficiently large and indefinite as to comprise the general public or an indefinite segment thereof. Accordingly, the second *ElderTrust* factor is satisfied. The Town's arguments to the contrary fail for the reasons set forth in the majority's opinion.

For all of the above reasons, therefore, I agree with the majority that we should affirm the trial court's determination that MacDowell is a charitable organization entitled to a tax exemption under RSA 72:23, V for the 2005 tax year.

DUGGAN, J., joins in the special concurrence.