# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2021-0392, <u>Appeal of City of Rochester</u>, the court on January 31, 2023, issued the following order:

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The petitioner, City of Rochester (City), appeals an order of the Board of Tax and Land Appeals (BTLA) ruling that the respondent, Rochester Agricultural & Mechanical Association (RAMA), is entitled to a charitable tax exemption under RSA 72:23, V (2012). We affirm.

I. Background

The following facts were found by the BTLA or appear in the record. In 1879, RAMA was established under Chapter 152 of the General Laws of New Hampshire authorizing voluntary corporations engaged in, among other things, "agricultural, educational, or charitable purposes." G.L. 152:1 (1878). Under its 1879 articles of incorporation, RAMA's stated purpose was "to improve and stimulate agricultural and mechanical skill" as well as to purchase and make improvements to property. RAMA organizes the annual Rochester Fair.

In 1984, RAMA filed restated articles of incorporation under RSA chapter 293-A. <u>See</u> RSA 293-A:10.07 (2016). The restated articles provide that RAMA "is empowered to transact any and all lawful business for which corporations may be incorporated under RSA 293-A," while reiterating that RAMA's principal purpose is "[t]o improve and stimulate agricultural and mechanical skills."

In 2020, RAMA filed an application for a charitable tax exemption with the City. The City denied the application because it concluded that RAMA's "charter speaks about the purpose of its formation but contains no <u>obligations</u> to do any charitable acts."

RAMA appealed to the BTLA. After an evidentiary hearing, the BTLA found that RAMA was a charitable organization eligible for the tax exemption under RSA 72:23, V. The City moved unsuccessfully for a rehearing, and this appeal followed.

II. Analysis

On appeal, the City has the burden of showing that the BTLA's decision is clearly unreasonable or unlawful. Appeal of City of Concord, 161 N.H. 344, 347 (2011); see RSA 541:13 (2021). The BTLA's findings of fact are deemed prima facie lawful and reasonable. Appeal of City of Concord, 161 N.H. at 347-48. "We will not set aside or vacate a BTLA decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence before us, that such order is unjust or unreasonable." Id. at 348 (quotation and brackets omitted).

Resolution of this appeal requires that we consider the interpretation and application of RSA 72:23, V and RSA 72:23-l. ElderTrust of Fla. v. Town of Epsom, 154 N.H. 693, 696 (2007); see RSA 72:23-l (2012). The interpretation and application of statutes present questions of law, which we review de novo. ElderTrust, 154 N.H. at 696. "Therefore, if we find that the board misapprehended or misapplied the law, its order will be set aside." Appeal of City of Concord, 161 N.H. at 348 (quotation omitted). "We note that the legislative purpose to encourage charitable institutions is not to be thwarted by a strained, over-technical and unnecessary construction." Marist Bros. of N.H. v. Town of Effingham, 171 N.H. 305, 310 (2018) (quotation omitted).

The BTLA concluded that RAMA is a charitable organization eligible for a tax exemption after considering the four factors set forth in ElderTrust: (1) whether the institution or organization was established and is administered for a charitable purpose; (2) whether an obligation exists to perform the organization's stated purpose to the public rather than simply to members of the organization; (3) whether the land, in addition to being owned by the organization, is occupied by it and used directly for the stated charitable purposes; and (4) whether any of the organization's income or profits are used for any purpose other than the purpose for which the organization was established. ElderTrust, 154 N.H. at 697-98. Under the fourth factor, the organization's officers or members may not derive any pecuniary profit or benefit. Id. at 698; see RSA 72:23, V. On appeal, the City challenges the BTLA's findings with respect to each of these factors.

As to the first ElderTrust factor (requiring taxpayer to be established and administered for a charitable purpose), ElderTrust, 154 N.H. at 697, the City argues that (1) RAMA is not established as a charitable organization, and (2) organizing the Rochester Fair does not constitute a charitable function.

We first address whether RAMA is established as a charitable organization. RSA 72:23, V requires that an entity must be a "charitable organization[]" to be eligible for a tax exemption. RSA 72:23, V. RSA 72:23-l defines the word "charitable" with respect to RSA 72:23, and provides that "[t]he term 'charitable' as used to describe a corporation, society or other

2

organization within the scope of this chapter . . . shall mean a <u>corporation</u>, society or organization established and administered for the purpose of performing, and obligated, by its charter or otherwise, to perform some service of public good." RSA 72:23-*l* (emphases added). The City argues that RAMA filed its 1984 restated articles of incorporation under RSA chapter 293-A, the New Hampshire Business Corporation Act, as an entity authorized to conduct "all lawful business." The City argues that the 1984 incorporators could have, but did not, incorporate under RSA chapter 292, which governs voluntary corporations. <u>See</u> RSA 292:1 (2016) (setting forth the purposes for which voluntary corporations may be formed, including "[t]he promotion of agriculture").

The legislature did not limit its definition of "charitable" to only those institutions incorporated under chapter 292, and we decline to do so. <u>See</u> RSA 72:23-*l*. We will not add words that the legislature did not see fit to include, nor will we adopt an "over-technical and unnecessary construction" of RSA 72:23-*l*. <u>Marist Bros.</u>, 171 N.H. at 310; <u>see also</u> <u>Appeal of Town of Seabrook</u>, 163 N.H. 635, 653 (2012) ("We accord statutory language its plain and ordinary meaning, and we will not add words the legislature did not see fit to include."). The fact that RAMA's restated articles of incorporation were filed under chapter 293-A is not sufficient, on its own, to disqualify RAMA from meeting the statutory definition of "charitable." <u>See</u> RSA 72:23-*l*.

The City next argues that RAMA's articles of incorporation do not provide a purpose that is charitable in nature. We disagree.

"Generally, charitable purposes fall into the following categories: (1) relieving poverty; (2) promoting health; (3) advancing education; (4) aiding religion; (5) providing governmental or municipal facilities and services; and (6) other purposes that are beneficial to the community." <u>Granite State Mgmt. & Res. v. City of Concord</u>, 165 N.H. 277, 284 (2013). RAMA's restated 1984 articles of incorporation provide that the organization's principal purpose is "[t]o improve and stimulate agricultural and mechanical skills." That purpose falls into the third general category of charitable purposes — advancement of knowledge or education. <u>See</u> <u>id</u>.; <u>see</u> <u>also</u> <u>Restatement (Third) of Trusts</u> § 28(b) (2003) (discussing purposes of a charitable trust). RAMA's purpose is consistent with educational purposes we have previously recognized as charitable. <u>See, e.g.</u>, <u>Marist Bros.</u>, 171 N.H. at 311 (holding that advancing education and aiding religion are charitable purposes); <u>Town of Peterborough v. MacDowell Colony, Inc.</u>, 157 N.H. 1, 7 (2008) (holding that promoting art is a charitable purpose); <u>Greater &c. Girl Scout Council v. Pelham</u>, 100 N.H. 24, 26 (1955) (holding that training young people for citizenship is a charitable purpose). In light of the foregoing, the City has not met its burden of showing, by a preponderance of the evidence, that the BTLA's finding that RAMA is established as a charitable organization is unjust or unreasonable. <u>See</u> <u>Appeal of City of Concord</u>, 161 N.H. at 348.

3

We turn next to the second ElderTrust factor: whether RAMA is obligated to perform its charitable purpose for the public.  See ElderTrust, 154 N.H. at 697-98.  The City argues that organizing the Rochester Fair is not a charitable act because the public must pay to attend and only 20-25% of the Fair is agricultural.

As to the first argument, our case law does not prohibit charitable organizations from charging fees.  See Marist Bros., 171 N.H. at 312 ("The charge of an admission fee, all of the proceeds of which are used to defray operating expenses, does not alter [an institution's] standing as a charity."); Granite State, 165 N.H. at 292 ("It is recognized that a corporation does not lose its exempt status . . . merely because it has a net income or makes a profit or charges fees for its services.  The destination of the income, and not the source of the income, determines the exemption." (quotation omitted)).  Therefore, the fact that the public must pay to participate in the Rochester Fair is not fatal to RAMA's charitable status.

As to the City's second point, the BTLA concluded:

> The Taxpayer has a stated purpose in its "charter" documents that includes the promotion (or "stimulation") of "agricultural and mechanical skill."  Although the city may believe otherwise, the conduct of an annual agricultural fair, where farm products, methods and equipment are exhibited, promoted, displayed and honored by the Taxpayer, helps carry out its charitable purpose of promoting agricultural and mechanical skill.

(Citation omitted.)

We agree with the BTLA.  The City characterizes the Rochester Fair as a "carnival."  However, the presence of amusements and attractions at the Fair does not negate its charitable purpose.  See Maryland State Fair & A. Soc. v. Supervisor of Assess., 172 A.2d 132, 139 (Md. 1961).  Indeed, amusements and attractions advance RAMA's charitable purpose by exposing a larger audience to the agriculture-related exhibits and displays.  Id.  The BTLA did not misapprehend or misapply the law when it found that organizing the Rochester Fair constituted a charitable act.  See Appeal of City of Concord, 161 N.H. at 348.

The City argues that RAMA lacks an enforceable charitable obligation and, therefore, the BTLA erred in finding that it satisfied the second ElderTrust factor.  See ElderTrust, 154 N.H. at 697-98.  The City argues that because RAMA's restated articles of incorporation lack mandatory language, such as "shall," the BTLA should not have considered RAMA's history.  The City's focus on the word "shall" is misplaced.  See RSA 72:23-l (stating that an organization must be "obligated, by its charter or otherwise, to perform some service of public good or welfare" (emphasis added)); see also Marist Bros., 171 N.H. at 315 ("In determining whether an organization has an enforceable obligation to

4

perform a charitable service, we look to both its charter or organizational statements and its actions taken pursuant to those statements." (emphasis added)).

"The purpose of the obligation requirement is to prevent organizations, even if they operate for charitable purposes, from obtaining the benefits of a tax exemption without providing some service of public good." ElderTrust, 154 N.H. at 699. To establish this obligation we have consistently looked to both an organization's chartering documents and its historical operations. See, e.g., Marist Bros., 171 N.H. at 315; MacDowell Colony, 157 N.H. at 8-9; Appeal of City of Franklin, 137 N.H. 622, 626 (1993).

RAMA's history and chartering documents are unique and unlike any we have previously considered. RAMA was established under Chapter 152 of the General Laws of New Hampshire in 1879. For almost 150 years, RAMA has organized the Rochester Fair in accordance with its stated purpose and has operated without regard for profit. As evidence of this history, RAMA points to its classification as a tax-exempt organization by the Internal Revenue Service as well as its registration with the Charitable Trusts Unit of the New Hampshire Attorney General's Office.

Although RAMA's restated articles provide that it "is empowered to transact any and all lawful business for which corporations may be incorporated under RSA 293-A," RAMA maintains that, as a charity, "RSA 7:19–32-a prohibit it from operating as a for-profit entity or from deviating from its stated purpose" of improving and stimulating agricultural and mechanical skills. RAMA has argued, to both this court and the BTLA, that RSA 7:28-f authorizes the Attorney General's Charitable Trusts Unit to bring an enforcement action if it violates these prohibitions. Therefore, we conclude that the principles of judicial estoppel would prevent RAMA from arguing that it is not obligated to comply with RSA 7:19–32-a.

In light of RAMA's unique history — a chapter 152 entity reincorporating under RSA chapter 293-A while also being registered as a charitable organization — as well as its nearly 150-year history of organizing the Rochester Fair and operating as a non-profit organization, we conclude that, even if the restated articles alone do not sufficiently circumscribe RAMA's discretion, an enforceable charitable obligation nevertheless exists. See Marist Bros., 171 N.H. at 315.

Next, the City argues that the BTLA erred when it found that the land for which RAMA sought a charitable tax exemption is owned, occupied, and used by RAMA for its stated charitable purpose as required by the third ElderTrust factor. See ElderTrust, 154 N.H. at 698. On appeal, the City appears to argue that RAMA does not use its land for a charitable purpose because a third-party vendor coordinates events at the fair, and that the BTLA "ignored" its evidence

to this effect. Our review of the record, including the transcript, leads us to conclude there was a sufficient basis to support the BTLA's decision. See Marist Bros., 171 N.H. at 309 ("[W]e defer to the [BTLA]'s judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." (quotation omitted)).

Finally, the City challenges the BTLA's finding that RAMA meets the fourth ElderTrust factor. See ElderTrust, 154 N.H. at 698. The City argues that RAMA's members derive pecuniary benefits from the organization because "shareholders of RAMA and their families receive free tickets to the Rochester Fair while the public has to pay."

The BTLA found that:

In the board's experience, it is not uncommon for many tax exempt organizations, including museums devoted to art, history, natural history and other purposes, as well as agricultural fairs, to charge the public for admission, food and drink and other attractions while not charging admission to members. This practice is both common and eminently reasonable and does not result in the loss of a charitable exemption.

On appeal, the City does not challenge these findings or the BTLA's legal conclusion. Therefore, we will not review them sua sponte.

Further, our case law acknowledges members of a charitable organization can receive some benefits without violating the prohibition on pecuniary benefits. See Marist Bros., 171 N.H. at 324-25. For example, in Marist Brothers, we considered whether allowing "fifty (50) to sixty (60) children or relatives of camp employees and brothers to attend the camp for free each summer" constituted a pecuniary benefit to the members of the religious organization that ran the camp. Id. at 324 (quotation omitted). We concluded that because the Brothers receive no compensation for staffing the camp, "free camp attendance for the Brothers' relatives would constitute nothing more than payment of reasonable compensation to members for their service," and thus did not amount to a pecuniary benefit. Id. at 324-25 (quotation omitted). In this case, the BTLA heard testimony that members receive only two free admission tickets to the Fair. To the extent that the free admission tickets are given to members in recognition of their volunteer efforts, as RAMA argues on appeal, the two free tickets are analogous to the free camp attendance in Marist Brothers, and can be viewed as payment of reasonable compensation to members for their service. See id.

Thus, we conclude that the City has not shown, by a preponderance of the evidence, that the BTLA's finding that "[w]hile [RAMA] has shareholders,

officers and a board of directors, they are not compensated, no dividends of any type are paid and no income or profits are diverted to them" is unjust or unreasonable. We, therefore, decline the City's invitation to reverse on this ground.

For the foregoing reasons, the City has not met its burden on appeal. Therefore, the BTLA's decision ruling that the City erred in denying RAMA a charitable tax exemption under RSA 72:23, V is affirmed. We have reviewed the City's remaining arguments and determine that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**