NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Sullivan
Case No. 2022-0592
Citation: New London Hosp. Ass'n v. Town of Newport, 2024 N.H. 33


THE NEW LONDON HOSPITAL ASSOCIATION, INC.

v.

TOWN OF NEWPORT

Argued: October 3, 2023
Opinion Issued: June 26, 2024


Devine, Millimet & Branch, Professional Association, of Manchester (Matthew R. Johnson on the brief and orally), for the plaintiff.

Drummond Woodsum, of Manchester (Keriann Roman and Matthew Serge on the brief and orally), for the defendant.

Preti Flaherty Beliveau & Pachios, PLLP, of Concord (Nathan R. Fennessy on the brief and orally), for New Hampshire Hospital Association, as amicus curiae.

New Hampshire Municipal Association, of Concord (Stephen C. Buckley on the joint brief), and Upton & Hatfield, LLP, of Portsmouth (Russell F. Hilliard on the joint brief), for New Hampshire Municipal Association and Town of Bedford, as amici curiae.

HANTZ MARCONI, J.

[¶1] The plaintiff, The New London Hospital Association, Inc. (NLH), appeals a decision of the Superior Court (Tucker, J.) dismissing its appeals from denials by the defendant, Town of Newport (Town), of NLH's applications for charitable property tax exemptions for tax years 2015, 2017, and 2018. The Town cross-appeals, challenging the trial court's rulings that NLH satisfied the second and third factors for charitable exemption that we articulated in ElderTrust of Florida, Inc. v. Town of Epsom, 154 N.H. 693 (2007). We affirm the trial court's rulings that NLH satisfied the second and third ElderTrust factors. We reverse its ruling that NLH failed to prove that it satisfied the fourth ElderTrust factor, and remand.

I. Factual Background

[¶2] The following facts are taken from the trial court's narrative order issued after a six-day bench trial or from the contents of documents in the record. NLH is a nonprofit corporation exempt from federal income taxation pursuant to section 501(c)(3) of the federal tax code. See 26 U.S.C. § 501(c)(3) (2018). It is also a regulated charitable trust registered with the New Hampshire Department of Justice Charitable Trusts Unit. NLH's purpose, as stated in its articles of agreement, is as follows:

> The Corporation is established exclusively for the charitable, scientific and educational purposes herein set forth, subject to the provisions of New Hampshire RSA § 292 and the provisions of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"). The principal purposes of the Corporation shall be to operate an acute care hospital and related nursing home facility, to provide other facilities, services and products for the care of persons afflicted with illness or disabilities, without regard to age, race, sex, color, creed or national origin; either directly, through subsidiary or affiliated corporations or entities, or by contract or joint venture with other individuals or entities; and in furtherance thereof to acquire, hold, manage, invest, mortgage and dispose of property and funds of whatever character and generally to possess and exercise all powers permitted by the voluntary corporations under the laws of the State of New Hampshire.

2

All activities and functions of the Corporation shall be conducted in a manner which is consistent with the requirements of Section 501(c)(3) of the Code. Solely in furtherance of those purposes that qualify the Corporation as exempt from federal income tax pursuant to Section 501(c)(3) of the Code or any successor provision, the Corporation is authorized to act in furtherance of the best interests of Mary Hitchcock Memorial Hospital, a New Hampshire non-profit corporation which is a tax-exempt organization under Section 501(c)(3) of the Code, and Dartmouth-Hitchcock Clinic, a New Hampshire non-profit corporation which is a tax-exempt organization under Section 501(c)(3) of the Code, and to do everything necessary, suitable, or proper for the accomplishment, attainment, or furtherance of, to do every other act or thing incidental to, appurtenant to, growing out of, or connected with, the purposes, objects, or powers set forth in these Articles, whether alone or in association with others; provided that nothing herein set forth shall be construed as authorizing the Corporation to possess any purpose, object, or power, or to do any act or thing forbidden of any organization exempt from federal income tax pursuant to Section 501(c)(3) of the Code, or any successor provision, which would threaten the Corporation's tax-exempt status.

[¶3] NLH owns the property in Newport at issue here, on which it operates the Newport Health Center (NHC). NHC is classified under federal law as a Rural Health Clinic as part of a federal initiative addressing the shortage of physicians in rural areas. NHC is the only outpatient treatment center in Newport.

[¶4] For a number of years, NLH leased "sub-optimal" space for NHC at the property. NLH purchased the property in 2012 and constructed a new facility with more space to accommodate additional physicians and serve additional patients.

[¶5] In tax year 2015, NLH applied for a charitable tax exemption for the NHC property. The Town denied the exemption and NLH appealed to the superior court. See RSA 72:34-a (2012 & Supp. 2023). Subsequent applications for tax years 2017 and 2018 were also denied, and those denials were appealed to the superior court. The three appeals were thereafter consolidated.

[¶6] NLH moved for summary judgment, which the trial court denied. The court ruled that "[v]iewing the evidence in the light most favorable to the Town, [NLH] established three of the four factors necessary for the exemption (the so-called [ElderTrust] factors), but not the fourth." The Town moved for reconsideration, which the court granted in part and denied in part.

3

Specifically, the court denied the motion as to the first ElderTrust factor, but granted it as to the second and third, ruling that, with respect to those factors, there were issues of material fact to be resolved at trial.

[¶7] Following a bench trial, the court dismissed the appeals. It ruled that NLH proved the second ElderTrust factor and that "NLH proved the third criterion with respect to the property it occupied directly at [NHC] . . . [but not] with respect to the space it leased for storage." With respect to the fourth factor, the court ruled that NLH failed to prove it met that criterion. This appeal and cross-appeal followed.

## II. Standard of Review

[¶8] When reviewing a trial court's decision after a trial on the merits, "we uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous." Jesurum v. WBTSCC Ltd. P'ship, 169 N.H. 469, 476 (2016). "We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence." Id. "Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." Id. "Nevertheless, we review the trial court's application of the law to the facts de novo." Id.

## III. Analysis

[¶9] Determination of NLH's right to an exemption from taxation is statutory. Town of Peterborough v. MacDowell Colony, 157 N.H. 1, 5 (2008). "The existence and extent of exemptions depends on legislative edict." Id. (quotation omitted). Therefore, "we will overturn the trial court's decision if we find that the court misapprehended or misapplied the law." Id. (quotation and brackets omitted). "We note that the legislative purpose to encourage charitable institutions is not to be thwarted by a strained, over-technical and unnecessary construction" of the applicable statutes. Id. (quotation and brackets omitted).

[¶10] NLH claims exemption under RSA 72:23, V, which applies to:

The buildings, lands and personal property of charitable organizations and societies organized, incorporated, or legally doing business in this state, owned, used and occupied by them directly for the purposes for which they are established, provided that none of the income or profits thereof is used for any other purpose than the purpose for which they are established.

4

RSA 72:23, V (2012).  The term "'charitable,' as used to describe a corporation, society or other organization" covered by RSA 72:23, V, is defined to mean:

> a corporation, society or organization established and administered for the purpose of performing, and obligated, by its charter or otherwise, to perform some service of public good or welfare advancing the spiritual, physical, intellectual, social or economic well-being of the general public or a substantial and indefinite segment of the general public that includes residents of the state of New Hampshire, with no pecuniary profit or benefit to its officers or members, or any restrictions which confine its benefits or services to such officers or members, or those of any related organization.

RSA 72:23-*l* (2012).  RSA 72:23-*l* further provides, "The fact that an organization's activities are not conducted for profit shall not in itself be sufficient to render the organization 'charitable' for purposes of this chapter, nor shall the organization's treatment under the United States Internal Revenue Code of 1986, as amended." Id.  Moreover, RSA 72:23-*l* is expressly "not intended to abrogate the meaning of 'charitable' under the common law of New Hampshire." Id.  NLH bears the burden of establishing entitlement to an exemption under RSA 72:23, V.  See RSA 72:23-m (2012).

[¶11] In ElderTrust, we distilled the requirements of RSA 72:23, V and RSA 72:23-*l* into a single four-factor test, holding:

> [T]he plain language of RSA 72:23, V and RSA 72:23-*l* requires the institution to satisfy each of the following four factors; namely, whether: (1) the institution or organization was established and is administered for a charitable purpose; (2) an obligation exists to perform the organization's stated purpose to the public rather than simply to members of the organization; (3) the land, in addition to being owned by the organization, is occupied by it and used directly for the stated charitable purposes; and (4) any of the organization's income or profits are used for any purpose other than the purpose for which the organization was established. Under the fourth factor, the organization's officers or members may not derive any pecuniary profit or benefit.

ElderTrust, 154 N.H. at 697-98.  Only the trial court's rulings on the second, third, and fourth factors are challenged in this appeal.

A.  Second ElderTrust Factor

[¶12] In its cross-appeal, the Town argues that the trial court erred in finding the second ElderTrust factor satisfied, because: (1) "NLH is not

5

obligated to operate exclusively for its stated charitable purposes"; (2) NLH ceased meeting one of its three stated purposes — operating a nursing home — notwithstanding a community need; and (3) NLH's sole member "exercised discretionary control over NLH's operations and its claimed charitable purposes." We address each argument in turn.

[¶13] The second ElderTrust factor requires that an organization is "obligated to perform its stated purpose to the public rather than simply to its members." Marist Bros. of N.H. v. Town of Effingham, 171 N.H. 305, 314 (2018) (quotation, brackets, and ellipsis omitted). "This factor has two components: whether there is an actual obligation to perform the stated purpose and whether such performance is to the general public or an indefinite segment of it." Id. The Town challenges the trial court's finding that NLH satisfied the first component. In determining whether the first component is satisfied, "we look to both [NLH's] charter or organizational statements and its actions taken pursuant to those statements." Id. at 315. "The public service which plaintiff is to render must be obligatory so as to enable the Attorney General or other public officer to enforce this right against it if the service is not performed." The Housing Partnership v. Town of Rollinsford, 141 N.H. 239, 241 (1996) (quotation and brackets omitted). "It follows that if the public benefit is limited to that which the plaintiff sees fit to provide at its option or in its uncontrolled discretion the requirements of RSA 72:23 V are not satisfied." Id. (quotation omitted).

[¶14] The Town contends that this component is not satisfied, because NLH's articles of agreement do not require it to operate exclusively for its stated charitable purpose. The Town contrasts NLH's articles of agreement with those of the taxpayer (ElderTrust) in ElderTrust. In that case, we noted, "By the express language of its articles of incorporation, ElderTrust was required to be 'operated exclusively for public charitable uses and purposes.' (Emphasis added.) In context, the use of the word 'exclusively' places a significant and enforceable limitation on ElderTrust's operation." ElderTrust, 154 N.H. at 700 (brackets omitted). We ultimately concluded that "ElderTrust's articles of incorporation sufficiently define a charitable purpose such that the purpose could be enforced. ElderTrust is not left with an impermissible level of discretion." Id.

[¶15] In the instant case, NLH's articles of agreement state that "[t]he Corporation is established exclusively for the charitable, scientific and educational purposes herein set forth." Citing that statement, the Town argues that "NLH's Articles of Agreement do not state that it is required to operate exclusively for its stated charitable purpose; instead, NLH's Articles use the word 'exclusively' to describe its formation purposes." The Town further notes that "as to its operations, [NLH's articles of agreement] broadly stat[e] that it may 'exercise all powers permitted by the voluntary corporations under the laws of the State of New Hampshire.'" Accordingly, the Town concludes, NLH's

6

articles of agreement do not contain an enforceable obligation to perform its charitable purpose. We disagree.

[¶16] Read as a whole, the statement of purpose in NLH's articles of agreement sufficiently obligates it to perform its charitable purpose. That statement provides, in part, that "[t]he principal purposes of the Corporation shall be to operate an acute care hospital and related nursing home facility, to provide other facilities, services and products for the care of persons afflicted with illness or disabilities, without regard to age, race, sex, color, creed or national origin." (Emphasis added.) Moreover, that statement of purpose explicitly provides that "nothing herein set forth shall be construed as authorizing [NLH] to possess any purpose, object, or power, or to do any act or thing forbidden of any organization exempt from federal income tax pursuant to Section 501(c)(3) of the Code, or any successor provision." We conclude that NLH's articles of incorporation "sufficiently define a charitable purpose such that the purpose could be enforced." Id.

[¶17] The Town further argues, however, that despite naming three principal purposes in its articles of agreement (operation of an acute care hospital, operation of a related nursing home, and provision of facilities, services, and products for the care of persons with illness or disabilities), NLH ceased to perform one of them. Specifically, in 2016, NLH closed a nursing home. The Town cites no authority for the proposition that an entity that lists multiple charitable purposes in its organizational documents must at all times perform each and every one of them to qualify for a charitable property tax exemption, and we have found none. Accordingly, we are not persuaded by the Town's argument.

[¶18] The Town next argues that NLH failed to meet its burden on the second ElderTrust factor as a result of its agreement with its sole member, Dartmouth-Hitchcock Health (DHH). The Town points to the agreement of NLH, DHH, and the Mary Hitchcock Memorial Hospital, and the Dartmouth-Hitchcock Clinic (doing business together as Dartmouth-Hitchcock (D-H)), to affiliate in which DHH "retain[ed] . . . [a number of] reserved powers over [NLH]." The agreement lists a number of actions that "must be approved by" DHH's board of trustees, including "[t]o reallocate the assets and resources of [NLH] and D-H/DHH as appropriate to serve the overall best interests of the D-H System." The Town contends that by these provisions, "DHH has the authority to deplete NLH's assets and resources for the benefit of the rest of the Dartmouth Hitchcock system" and that "[t]his alone commands a conclusion that NLH failed to meet its burden on the second ElderTrust factor."

[¶19] Reading the agreement as a whole, we are not persuaded. The agreement's statement of purpose notes that "the Parties desire to further their respective charitable missions" and describes how they expect integration to accomplish that objective. The agreement further provides that "[t]he parties

7

have acknowledged the compatibility of their charitable missions, and those of their subsidiaries, and no Party will be required to take any action that would be materially inconsistent with or in contravention of its respective charitable mission." It also provides:

> The D-H system at all times will be operated in a manner consistent with the charitable missions of the Parties and their subsidiaries and none of them will be required to take any action pursuant to this Agreement which would jeopardize its tax exempt or public charity status under federal income tax law or state law. After the Effective Date, the assets of [NLH] shall continue to be devoted to the charitable objectives of [NLH] and the needs of the communities [NLH] serves, subject to D-HH's reserved powers, which will be exercised in a manner consistent with New Hampshire law.

We conclude that the mere existence of DHH's reserved powers over NLH does not prevent NLH from satisfying the second ElderTrust factor. For the foregoing reasons, we affirm the trial court's ruling on that factor.

### B. Third ElderTrust Factor

[¶20] The Town next argues that the trial court erred in finding that NLH satisfied the third ElderTrust factor, which required NLH to show that "the land, in addition to being owned by the organization, is occupied by it and used directly for the stated charitable purposes." Id. at 698. The Town notes that two of NLH's stated purposes — operation of an acute care hospital and operation of a related nursing home — were not performed at NHC. It then contends that NLH's third stated purpose — "to provide other facilities, services and products for the care of persons afflicted with illness or disabilities, without regard to age, race, sex, color, creed or national origin" — was not performed at the Newport property, or if performed, any such performance was "slight, negligible, or insignificant," because NHC "provided no inpatient services, no surgical services, no specialist services," but rather provided primary care service, women's health services, and ancillary services. See id. at 701 ("When the use is slight, negligible or insignificant, or not in the performance of the public purpose, the applicant is not entitled to a tax exemption."). The Town argues that "NHC was set up intentionally to provide primary care services with a mechanism in place for referrals for medical treatment to NLH in New London or DHH in Hanover." (Footnote omitted.) It then asserts that "NHC was not used for NLH's stated charitable purposes but was used as a money maker for the DH system."

[¶21] We are not persuaded. We think it obvious that "the care of persons afflicted with illness or disabilities" generally begins with diagnosis of that illness or disability, and that referral to a specialist for a more definitive

8

diagnosis and/or treatment is common.  We cannot conclude that providing primary care and women's health services at NHC does not carry out NLH's third stated purpose.

[¶22] The Town next argues that NLH did not operate NHC with an underlying motive of generosity, benevolence, or altruism, which, the Town contends, is required.  NLH counters that the Town misreads the case law and that "ElderTrust does not inquire into the subjective motives of the organization seeking a charitable tax exemption."  We agree with NLH.

[¶23] The Town relies on Young Women's Christian Ass'n v. Portsmouth, 89 N.H. 40 (1937), and Society of Cincinnati v. Exeter, 92 N.H. 348 (1943).  It misreads both.  In neither case did we require proof of a generous, benevolent, or altruistic motive, but rather we presumed such a motive was "inherent in a legal charity."  Id.  As we stated in Young Women's Christian Association, "if an institution is organized and conducted to perform some service of public good or welfare, with no pecuniary profit to its officers or members, and with no restrictions which confine benefits to them, its descriptive character as charitable under the statute follows."  Young Women's Christian Ass'n, 89 N.H. at 43.  The required elements of a charitable institution's organization and conduct noted in Young Women's Christian Association are now contained within the four ElderTrust factors.  Having rejected the Town's challenges to the trial court's ruling on the third ElderTrust factor, we affirm that ruling.

C. Fourth ElderTrust Factor

[¶24] NLH challenges the trial court's ruling on the fourth ElderTrust factor, which inquires whether "any of [NLH's] income or profits are used for any purpose other than the purpose for which [NLH] was established." ElderTrust, 154 N.H. at 698.  The trial court found that NLH did not establish that it satisfied this factor.  The court found: "Circumstantial evidence that Dartmouth-Hitchcock received a business benefit from NHC is found in the policy on patient referrals, and [its] payment to independent contractors . . . was not satisfactorily explained."

[¶25] According to the Town, the trial court's ruling on the fourth factor is further supported by "ample evidence presented at trial that called into serious question the reasonableness of the salaries paid to NLH officers and physicians."  The trial court found, however, that "NLH's additional evidence on the reasonableness of the compensation it paid its CEO and providers is not enough to prove it did not use funds from NHC to advance economic interests of Dartmouth-Hitchcock."  The parties dispute the meaning of this statement. We read it to mean that the court credited NLH's evidence that it paid reasonable compensation to its CEO and providers, but nevertheless found that NLH failed to meet the fourth factor on other grounds; namely, the patient referral policy and payments to independent contractors.  See Shearer v.

9

Raymond, 174 N.H. 24, 37 (2021) ("The interpretation of a trial court order presents a question of law for this court, which we review de novo."). Thus, we agree with NLH that the court "believed NLH's compensation levels for its officers and employees was reasonable" and we decline to address the Town's argument premised on a contrary interpretation of the evidence.

[¶26] NLH first argues that the trial court erred in determining that DHH received a business benefit from NHC through its patient referral policy. The Town counters that DHH received such a benefit by "realiz[ing] downstream revenues due to referrals from patients seen at [NHC]."

[¶27] The referral policy states as its purpose: "All New London Hospital Association, Inc. (NLHA) affiliated providers will refer patients for appropriate medical care in an ethical and moral manner while adhering to state and federal guidelines." We interpret this policy to mean that NLH providers will refer patients out of NLH when "appropriate medical care" cannot be provided at NLH. See Petition of Warden (State v. Roberts), 168 N.H. 9, 18 (2015) ("We interpret written documents de novo."). Given that the policy concerns patients in need of services, we conclude, as a matter of law, that the practice of referring patients to DHH for "appropriate medical care" that NLH cannot provide, does not confer on DHH a "pecuniary . . . benefit" prohibited under the fourth ElderTrust factor. ElderTrust, 154 N.H. at 698.

[¶28] NLH next contends that the trial court erred in finding that it failed to satisfy the fourth ElderTrust factor based upon its payments to independent contractors. It argues that "[t]here is no provision of the statutory scheme or any other authority that prohibits a nonprofit charitable organization from hiring a for-profit entity to provide services that advance the charitable organization's charitable mission." The Town counters:

> The predominant amount of independent contractor compensation that NLH paid each year was paid to entities it is affiliated with, such as DHH and New England Alliance for Health. NLH failed to show how all these payments were being used in furtherance of any charitable purposes downstream, as opposed to benefiting the officers and employees of the other entities, for example.

This argument appears to implicate both prongs of the fourth ElderTrust factor: (1) "[none] of the organization's income or profits are used for any purpose other than the purpose for which the organization was established"; and (2) "the organization's officers or members may not derive any pecuniary profit or benefit." Id. at 698.

[¶29] As regards the first prong, the Town's argument misses the mark. The relevant inquiry is not whether the "downstream" use of those funds by the independent contractors was in furtherance of any charitable purposes, but

10

whether the services NLH purchased from the independent contractors furthered NLH's charitable purposes.  Cf. id. (noting, with respect to the companies in which certain ElderTrust director(s) held stock, that "ElderTrust is one client of these two companies, and as such, it pays each company for services rendered").

[¶30] The payments to independent contractors were disclosed on NLH's Form 990 federal tax returns, which required NLH to list the five highest-compensated independent contractors to which NLH paid more than $100,000 in the reporting period.  For the years in question, NLH listed various entities, including DHH, the amounts paid to each, and a description of the services for which such payments were made, including physician staffing and lab services, imaging, and management services.  NLH asserts that these services "advanced its charitable mission" and that "[t]here was no evidence to the contrary that these payments were made for an impermissible expense or for a reason other than the reasons identified on NLH's IRS form 990s."

[¶31] Similarly unpersuasive is the Town's argument that, "unlike the evidence in Marist Brothers[,] there was nothing presented to show how all of the entities receiving compensation from NLH share the same charitable mission."  Because NLH received services in exchange for the monies it paid the independent contractors, it need not show that those contractors share NLH's charitable mission.

[¶32] With respect to the second prong of the fourth ElderTrust factor, to the extent the Town argues that any payments by a charitable taxpayer to its member in exchange for goods or services violate the rule that "the organization's officers or members may not derive any pecuniary profit or benefit," id. at 698, Marist Brothers and ElderTrust support a contrary conclusion.  See Marist Bros., 171 N.H. at 321-24; ElderTrust, 154 N.H. at 706.  In examining the taxpayer's payments to an affiliated entity in Marist Brothers, we cited cases from other jurisdictions holding that "similar payments for assistance by a parent organization did not preclude a charitable tax exemption."  Marist Bros., 171 N.H. at 323.

[¶33] The Town nevertheless argues that "the burden is on NLH to show that those expenses are being used exclusively to further its charitable mission" and that it failed to meet that burden because "the trial court could not rule out the possibility that some funds were not used for NLH's claimed charitable purposes."  We agree with NLH, however, that it was not required to "rule out the possibility" that factor four was not satisfied.  Rather, it was required to prove its entitlement to a charitable tax exemption by a preponderance of the evidence.  Nashua Hous. Auth. v. Wilson, 162 N.H. 358, 361 (2011) ("In a civil action the burden of proof is generally on the plaintiff to establish its case by a preponderance of the evidence." (quotation omitted)).

11

[¶34] For the foregoing reasons, we affirm the trial court's decision with respect to the second and third ElderTrust factors. We reverse its decision with respect to the fourth factor, and remand for proceedings not inconsistent with this decision.

<u>Affirmed in part; reversed in part; and remanded</u>.

MACDONALD, C.J., and DONOVAN, J., concurred.